# Mitchell *v.* Baker, Appellant.

*Contract—Sale—Delivery to carrier—Indorsement of bill of lading.*

Where under a contract of sale the goods sold are shipped by the manufacturer to the purchaser under directions from the seller, and the bill of lading is made out in the name of the seller who indorses it over to the purchaser, the title to the goods upon delivery to the carrier and upon indorsement of the bill of lading, passes to the purchaser.

Bills of lading are symbols of property, and when properly indorsed operate as a delivery of the property itself, investing the indorsees with a constructive custody which serves all the purposes of an actual possession, and so continues until there is a valid and complete delivery of the property, under and in pursuance of the bill of lading, and to the person entitled to receive the same.

*Contract—Sale—Breach—Measure of damages.*

In a contract for the delivery of chattels upon a special stipulation as to quality and quantity, where the vendor is ready and willing to deliver, the measure of damages is the difference between the contract price and the cost of manufacture and delivery.

Argued Feb. 15, 1904. Appeal, No. 47, Jan. T., 1903, by defendant, from judgment of C. P. Schuylkill Co., July T., 1901, No. 27, on verdict for plaintiff, in case of James E. Mitchell, trading as James E. Mitchell & Company, v. E. H. Baker. Before MITCHELL, C. J., FELL, BROWN, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit for goods sold and delivered.

The opinion of the Supreme Court states the case.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $1,758.21. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

·*W. F. Shepherd* and *R. H. Koch,* with them *George W. Gise,* for appellant.

*Wesley K. Woodbury* and *John F. Whalen,* for appellee.

OPINION BY MR. JUSTICE THOMPSON, March 7, 1904:

The contract for the breach of which damages in this suit

were claimed was made at Schuylkill Haven, Pennsylvania. The selling agent of appellee called upon appellant and offered to sell him 20,000 pounds of a certain kind of yarn. Appellant offered to buy 20,000 pounds of such yarn at a specified price. The selling agent told appellant that he would submit this offer to appellee. This he did and appellee having ascertained from the Kingston Mills in North Carolina that they would furnish him the amount of yarn that appellant wanted to purchase, he sent a sales note on December 11, as follows : " James E. Mitchell and Co., 122–124 Chestnut Street, Philadelphia, December 6th, 1900, No. 1059. By Hill. Sold to E. H. Baker, 20,000 lbs. cones, 10's at 17½, 11's at 17¾. Shade 97 steel grey, two cents per pound more. Frt. paid Mill, 63. Price as above. Terms 2 per cent. 10 days. Delivery 1,000 to 1,200 lbs. weekly, beginning March, 1901. Note. It is mutually agreed that if the production of the mill accepting contract be curtailed by strikes or any unavoidable accident, the delivery shall be in proportion to the production. Advise at once if this order is incorrect in any particular, otherwise shall be considered confirmed by you. Respectfully, James E. Mitchell and Co."

Appellant did not disaffirm the contract but on the contrary on January 8, stated to the representative of appellee that it was all right. Accordingly appellee had shipped to the appellant from the mills in North Carolina, 7,145 pounds of yarn. The bills of lading were in the name of appellee and by him indorsed to appellant. This yarn remained with the railroad company, and was finally sold upon execution as the property of the appellant. The balance of the 20,000 pounds of yarn contracted for was not forwarded because the appellant had refused to receive it.

The present suit was to recover for the yarn shipped to Schuylkill Haven, and for damages for the breach of contract in refusing to receive and pay for the balance.

The contention of the appellant was that when the representative of the appellee received the order, it was a conditional one by which the appellant was to receive and pay for the yarn from time to time as he required it for the trade, and not from 1,000 to 1,200 pounds per week. This was denied by the representative of appellee and the evidence would scarcely

warrant that such was the case, but whether so or not, the contract was made by the letter of December 11, 1900. That letter is clear and specific and without conditions. It was accepted by the appellant and became a binding contract in consequence of which appellee entered into a contract by which he agreed to purchase from the Kingston Mills the 20,000 pounds of yarn in question. By his contract appellant undertook to pay for the yarn in accordance with it, and as there was not sufficient evidence of any set-off he was liable to pay the contract price for that which had been shipped from North Carolina and damages for refusal to receive the balance.

Appellant contended, however, that he was not liable to pay for the former because it was never delivered to him. This yarn was shipped from North Carolina to Schuylkill Haven and bills of lading for the same were in the name of appellee and by him indorsed to appellant. The shipment of this yarn to Schuylkill Haven and the delivery of the bills of lading duly indorsed were a delivery to the appellant and passed the title to him for the yarn in question. By the delivery to the carrier and by the indorsement of the bills of lading the railroad company became the agent of the indorsee and bound to deliver the goods in question.

In Pennsylvania Railroad Company v. Stern and Spiegel, 119 Pa. 24, Mr. Justice PAXSON said : " Bills of lading are symbols of property, and when properly indorsed operate as a delivery of the property itself, investing the indorsees with a constructive custody which serves all the purposes of an actual possession, and so continues until there is a valid and complete delivery of the property, under and in pursuance of the bill of lading, and to the person entitled to receive the same : Hieskell v. Farmers & Mechanics' National Bank, 89 Pa. 155. There could be no delivery except in accordance with the bill of lading : Dows v. National Exchange Bank, 91 U. S. 618; Stollenwerck v. Thatcher, 115 Mass. 224." The appellant was therefore liable to pay for the 7,145 pounds of yarn so shipped.

As to the damages, he was liable to pay them for his refusal to receive the balance. Appellee by reason of the contract with appellant contracted with the Kingston Mills for the special kind of yarn in question. He was bound to take it and having done so sold it. He sold it for the market prices and

has suffered a loss. It is very manifest that this actual loss is a proper measure for damages. In Puritan Coke Company v. Clark, 204 Pa. 556, Mr. Justice DEAN says: "The law therefore is and ought to be that in a contract for the delivery of chattels upon a special stipulation as to quality and quantity, where the vendor is ready and willing to deliver, the measure of damages is the difference between the contract price and the cost of manufacture and delivery. When on a resale he receives more than the cost of manufacture he is entitled to the difference between the price it sold for and the contract price." The learned trial judge cannot therefore be convicted of error in directing the jury to find a verdict for appellee in the sum so found.

The assignments of error are not sustained and the judgment is affirmed.