THADDEUS V. LADNIER *v.* PATRICK R. LADNIER.

[43 South., 946.]

STATUTE OF FRAUDS. *Code* 1892, § 4229. *Sales of goods. Delivery.*

A verbal sale, involving no cash payment or understanding as to terms of payment, of a flock of sheep ranging in the woods, for four hundred dollars, is not saved from the statute of frauds, Code 1892, § 4229, by the delivery of three pet lambs not of the flock.

FROM the circuit court of Harrison county.

HON. WILLIAM H. HARDY, Judge.

Patrick, the appellee, was plaintiff in the court below; Thaddeus, the appellant, was defendant there. The suit was for the alleged value of a flock of sheep, four hundred dollars, which plaintiff claimed to have sold defendant "woods range delivery." The defense was predicated of the statute of frauds. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts sufficiently appear in the opinion of the court.

*E. M. Barber,* for appellant.

The part of our statute which bears directly on the acts of the appellant relative to the purchase of the sheep is that he must have received at least a part of the sheep to have made the agreement binding, as there was no money paid nor memorandum in writing signed by him. The question then to be decided is, did the appellant receive the sheep or any part thereof at the time of the alleged agreement. There is no evidence that he ever performed any act after the time of the alleged

sale that could in any way be considered even tending towards his acceptance and receiving the sheep.

On the question of delivery, see *Moore* v. *Love,* 57 Miss., 765; *Daniel* v. *Frazier,* 40 Miss., 507; *Berry* v. *Waterman,* 71 Miss., 497, s.c., 15 South., 234; *Hinchman* v. *Lincoln,* 124 U. S., 337; *Shindler* v. *Houston,* 49 Am. Dec., 316.

*J. H. Mize,* for appellee.

In *Smith* v. *Sparkman,* 55 Miss., 652, this court holds the rule to be in such case: "Much depends on whether all has been done about the property which the parties intended, and whether the commodity was *in esse* at the date of the contract, in condition to be delivered. These considerations furnish valuable tests to determine whether the contract is an absolute sale, or executory."

In the instant case, we contend that all had been done about the property which the parties intended. The sheep were running on the range and were never penned except in shearing time; the parties made the contract of sale and then went out to where these three pet sheep were lying in an enclosure under a dogwood tree; they went close enough to the sheep to cause them to get up, and appellee, the vendor, pointed them out to appellant, the vendee, saying that his father wanted these three pet sheep and that he would like appellant to sell his father said sheep, and appellant said that appellee's father could have the sheep. This, together, with the acts of ownership exercised by appellant in saying that he would shear the sheep, as before set out, and his statement to Mrs. Ladnier and to Zeno that he had bought appellee's sheep, justified the jury in finding the verdict they did.

The cases cited by appellant in his brief are so foreign to the principle involved in the instant case that even those unlearned in the law can see their inapplicability, and we will not therefore discuss same, contenting ourselves with citing a few cases which we think are illustrative of the principle involved

in this case. *Brown* v. *Wade,* 42 Iowa, 647; *Calkins* v. *Lockwood,* 12 Conn., 154; *Calvin* v. *McKenzie,* 21 Ore., 184; *Ross* v. *Welsh,* 77 Mass., 235; *Johnson* v. *Watson,* 1 Ga., 348; *Lar* v. *Newell,* 25 Cal., 545.

Argued orally by *E. M. Barber,* for appellant.

CALHOON, J., delivered the opinion of the court.

The wisdom of the statute of frauds is proved by more than two centuries of experience. It has been said that it "carried its influence through the whole body of our civil jurisprudence, and is in many respects the most comprehensive, salutary, and important legislative regulation on record, affecting the security of private rights." 2 Kent, Com., 494, note "a." No part of it is of more importance for protection in the daily concerns of life than the clause invalidating oral contracts of sale of personalty for above $50, unless there is receipt by the buyer of all or part of it, or actual payment of all or part of the purchase price. In order to enforce such a contract it must be satisfactorily shown that there was an agreement of the minds of the parties selling and buying to the precise terms of the contract, and that something of earnest money was actually paid or secured on that contract, or that the property, or part of it, was actually delivered to and accepted as upon that contract by the buyer. If the delivery be of part for all, this constructive or symbolical delivery must plainly appear.

In the case before us it is difficult to repose quietly on the belief that there was an agreement of the two minds that the sale was concluded. No money was paid; no writing made; no clear and distinct understanding had as to the terms and times of payment. The whole reliance of the seller here is on a constructive delivery of three sheep for a flock in the range, whose number is not known, and the three were not of the flock in the range, but pets near the house. It seems very clear that there was nothing said at the barn to take the agreement from under

the operation of the statute of frauds. The plaintiff's own testimony was: "He said, 'You will sell me all the sheep at $400, and turn them over to me, woods range delivered,' and I said, 'Yes,' and he said, 'You consider it a trade,' and I said, 'Yes,' and he said, 'I will take them,' and that is where he shook me off. I wanted my money for them, and told him the richest man in the world would not refuse money. 'Woods range delivered' means a trade with them on the range, without penning them up; just take them as they are standing. There were two or three of the sheep my father wanted to buy from me, and I did not sell them to him. I did not want to sell two or three, without selling the rest of the flock, and I told him, if he would be kind enough to let my father have them, he would pay him for them, and that I would appreciate it; and he said he would let the old man have them. He said: 'You show me the sheep. You may be off when I come after them, and I want to know which ones to leave here for the old man.' And so we walked on around. The sheep were lying under a tree." It further develops, by a fair construction of the testimony of the plaintiff himself, that he was to turn over to appellant the marks and brands, which was never done. We cannot subscribe to the assumption that the evidence shows any acceptance and delivery of the three sheep as representative of the herd wandering in the range. The appellant absolutely denies that the trade was concluded.

We have examined the authorities cited by counsel on both sides, and now refer to the very elaborate notes to *Shindler* v. *Houston,* 49 Am. Dec., 325, *et seq.* We quote from page 329: "There must be, on the one hand, a delivery by the vendor with intent to vest the title and legal possession in the vendee, and, on the other hand, there must be, not only an actual receipt of the goods, or some part thereof, by the vendee, but also some act or conduct on his part clearly indicating an intent to accept them as owner in performance of the parol contract." To this MR. FREEMAN cites a large number of cases. On page

331 he cites many cases supporting the position that the vendor's lien must be divested by the receipt and acceptance in order to keep without the statute. So, if we turn this case around, and suppose that the buyer had sold the sheep to a third party, and inquire whether that party could succeed in an action of replevin against the seller on the evidence in this record, we must answer, "No," and the one involves the other.

*Reversed and remanded.*