## Nomordust Chemical Company v. J. A. Eberts & Company, Incorporated, Appellant.

*Contract—Sales—Breach of contract—Measure of damages.*

1. Where goods, not specially manufactured, are ordered by description to be sent from a distance, are separated from bulk, appropriated for the purpose of the vendee, and delivered to a common carrier with bill of lading to the vendee, and the vendee inspects and refuses to accept the goods because of alleged short weight and promptly notifies the vendor, who declines to take them back and the goods are sold by the carrier, the measure of damages in an action brought by the vendor against the vendee, is the contract price of the goods.

2. In an action to recover the price of a quantity of a dustless sweeping compound it appeared that the order of the defendant for the goods was "70 bbls. 200 lbs., 70 bbls. 100 lbs. and 50 kegs 50 lbs." When the goods arrived at defendant's station and were weighed, it was found that the weights of the barrels and kegs had been included with the contents in the weight as specified in the order. The defendant averred that the inducement to enter into the contract was an oral understanding that the weight of the packages should be excluded from the weights mentioned in the order. This was denied by the plaintiff. A part of the arrangement was that one of the plaintiff's experienced employees should work up a trade and sell the compound for the defendants. The defendant offered to prove that this salesman was in fact an agent of the plaintiff, and that he had sold a number of persons on the defendant's account a quantity of the compound at a certain price per pound without reference to the weight of the barrels. *Held*, that it was reversible error for the court to reject such an offer.

Argued Dec. 8, 1914. Appeal, No. 47, Oct. T., 1914, by defendant, from judgment of C. P. Northampton Co., April T., 1912, No. 53, on verdict for plaintiff in case of Nomordust Chemical Company v. J. A. Eberts & Company, Incorporated. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ.   Reversed.

Assumpsit to recover the price of a quantity of a dustless sweeping compound. Before STEWART, J.

The facts are stated in the opinion of the Superior Court.

At the trial when George W. Halliwell, a witness for defendant, was on the stand, the following offer was made:

Mr. Doster: We propose to prove by this witness that he is the George W. Halliwell that signed one of these slips included under exhibit No. 13; that he is the cashier of the Lehigh Valley National Bank and that the sale was made to him by this man Conway by the pound—200 pounds at three and one-half cents a pound, making $7.00.

Mr. Kirkpatrick: Objected to as incompetent, irrelevant and immaterial, that under the evidence there is nothing to show that Conway was acting for anybody but J. A. Eberts & Co. in making these sales. He was making the sale of goods which were to be the property of J. A. Eberts & Co. and he was acting under the instructions of J. A. Eberts & Co., and the evidence is that he was not acting under the instructions of the Nomordust Company.

The Court: You don't understand that these goods were to be charged to the Nomordust Company?

Mr. Doster: No. We say he was acting under his general directions, not ours, but from the Nomordust Company and their directions were, as is admitted by Mr. Hahlo on the stand, this morning, that their goods were to be sold at retail as all these letters show.

The Court: The objection is sustained. It seems to the court that it is immaterial what was done by Mr. Conway with reference to the sale of the goods for the Eberts Company. Bill sealed for defendant. [2]

Mr. Doster: We offer in evidence exhibit No. 21, in connection with the evidence of the witness (Howard Staib). Also offer in evidence exhibit No. 13, containing a report of sales by Mr. Conway to Eberts & Co.

Mr. Kirkpatrick: Objected to as incompetent, irrelevant and immaterial.

The Court: Objection sustained on the ground whether Mr. Conway was or was not the agent of Eberts is immaterial, the transaction was afterwards, and our attention must be directed to what took place on November 3. Bill sealed for defendant. [3]

Mr. Doster: Defendant offers to prove by C. C. Meixsell, whose name is on one of the slips returned by Mr. Conway, that he bought from Mr. Conway 200 lbs. at three and one-half cents a pound, making $7.00, and that he bought net and not gross; did not intend to pay for the barrel, according to the contract.

The Court: Same ruling as with reference to Mr. Halliwell and exhibit No. 13. Bill sealed for defendant. [4]

Defendant presented these points:

1. If the jury believe that an inducement to the execution of the contract was stated by the president of the plaintiff company that plaintiffs would send one specialty man to work on the bulk goods and another specialty man to work on the package goods, because the work of selling the bulk goods related to an entirely different class of customers from the work of selling package goods, which the defendant agreed to, and that the plaintiffs, although requested so to do, failed to send one specialty man to sell the bulk goods and another specialty man to work on the package goods, this constituted a failure to perform a vital condition precedent and entitled the defendant to regard the contract as rescinded. *Answer:* Refused. [5]

2. If the jury is satisfied from the evidence that the plaintiff's agents sold the goods in the name of the defendant, by the pound, and the goods, when they arrived, did not hold out the number of pounds, as sold, the defendant was justified in refusing to accept the goods. *Answer:* Refused. [6]

3. Even though the plaintiff offered to supply the

shortage, the defendant could not afterwards carry out the contract made by the plaintiff's agent without admitting that they (the defendants) were selling short-weight goods and thereby injuring the reputation of the defendant company for honest dealing. *Answer:* Refused. [7]

5. Even if the jury should find in favor of the plaintiff, they would not be justified in finding a verdict for the full price of the goods, but would be limited to find the difference between the contract price and the market price at the time and place set for delivery. *Answer:* Refused. [8]

6. There being no evidence in the case what became of the goods after they were refused, and no testimony to show the difference between the market and the contract price, the verdict must be for defendants. *Answer:* Refused. [9]

Verdict and judgment for plaintiff for $1,258.81. Defendant appealed

*Errors assigned* among others were (2–4) rulings on evidence, quoting the bill of exceptions, and (5–9) above instructions, quoting them.

*W. E. Doster,* for appellant.—Where the vendee refuses to accept the goods without sufficient cause, the title remains in the seller and the measure of damages for the refusal to accept is not the purchase price of the goods but the difference between the price agreed upon and the market value on the day appointed for delivery: Jones v. Jennings, 168 Pa. 493; Unexcelled Fire Works v. Polites, 130 Pa. 536; Puritan Coke Co. v. Clark, 204 Pa. 556; Gallagher v. Whitney, 147 Pa. 184; Blair v. Ford China Co., 26 Pa. Superior Ct. 374; Mitchell v. Baker, 208 Pa. 377; Allegheny Valley R. R. Co. v. Steele, 11 W. N. C. 113; Keeler Co. v. Schott, 1 Pa. Superior Ct. 458.

If the plaintiffs sold the goods in the name of the

defendant, by the pound, and the goods when they arrived did not hold out, defendant was justified in refusing the goods.

*Wm. H. Kirkpatrick*, of *Kirkpatrick & Maxwell*, for appellee.—Where the performance by the seller is complete so as to pass title to the goods to the buyer, the measure of damages is the contract price: Henderson v. Jennings, 228 Pa. 188.

OPINION BY KEPHART, J., February 24, 1915:

The plaintiff sues to recover the price of one car of nomordust shipped to the defendant. The contract had its origin in a conversation between the presidents of the respective companies, resulting in a proposal by letter from the plaintiff and acceptance by the defendant; followed by an order of January 18, 1912, for one minimum car of nomordust, sweeping compound, assortment to be in both package and bulk goods. It was conditioned in the contract that the plaintiff would send a specialty man in the territory wherein the goods were to be sold, at least four times a year to work the bulk goods, and a specialty man on packages as often as the plaintiff might deem advisable. The order of January 18, 1912, was for an "assortment for a car of nomordust as follows: . . . . 70 bbl. 200 lbs., 70 bbl. 100 lbs., and 50 kegs 50 lbs." The shipment of the car was delayed by the defendant until February 2, 1912, at which time it was directed to go forward from the plaintiff's works at Jersey City. On February 3, 1912, the bill of lading was mailed to the defendant with the invoices for the car. Upon the arrival of the car at its destination, Bethlehem, the defendant had the packages weighed. It was discovered that the contents of the 200 pound barrels averaged 170 pounds, the 100 pound barrels 84 pounds, and the 50 pound kegs 40 pounds. The defendant immediately notified the plaintiff and rejected the goods. Subsequently the railroad company

wrote the plaintiff that the goods were rejected and inquired what disposition should be made of the car. Plaintiff declined to interfere or have the car returned, whereupon the railroad company sold the car of nomordust for freight charges. The plaintiff brought suit for the contract price.

The defendant averred that the inducement to enter the arrangement with the plaintiff was an oral understanding that the weight of the packages should be net, that is, each 200 pound barrel should contain 200 pounds of nomordust, etc. This was denied by the plaintiff who held that the weight of the casks or wooden barrels was to be included with the contents in the weight as stipulated in the order of January 18, 1912, or gross weight. It was further alleged that the failure of the plaintiff to send two men to work up the trade for the package and bulk goods was a violation of this same oral understanding. This likewise was denied by the plaintiff. The verdict being in the plaintiff's favor, the defendant takes this appeal.

The controlling question is the measure of damages to be applied to the facts in this case. The purchaser ordered by description the merchandise in given receptacles common to the trade; it had not seen the article or the receptacles and knew nothing of the quantity before it was shipped; nor had it any opportunity to inspect the goods until after their arrival at Bethlehem. Upon the receipt of the order, with shipping directions, the plaintiff separated the goods from the bulk of goods in its establishment, and appropriated them to the particular purpose of this order. It delivered them to the common carrier. There is nothing in the contract controlling the question of delivery. The general rule is that where the parties have not stipulated in their agreement as to the place of delivery and the vendor resides at a distance, a delivery of the goods to a carrier for transportation is a delivery to the purchaser. This conclusion is strengthened by the fact that the bill of

lading for the car has been sent to the vendee investing him with a certain title to the property: Danmiller v. Kirkpatrick, 201 Pa. 218; Mitchell v. Baker, 208 Pa. 377, and cases therein cited.

The acts of separation of articles of merchandise from the bulk and their appropriation for a particular purpose by delivery to the common carrier, and the transmission of the bill of lading thereafter to the vendee have been held as passing the title to the vendee for certain purposes, and under certain conditions this is true, as for illustration, in case of loss of goods in transitu; yet as between the vendor and vendee it is not conclusive. It may be said to be a conditional title or that prima facie the title passed. There still remains in the vendee the right to inspect and accept the goods to ascertain if there has been a violation of any warranty, either express or implied, incident to the contract in question. If, upon inspection, the goods are not of the kind, quality, or quantity, if made up in sized packages, purchased, the vendor has not complied with his contract. It was as though no contract existed for the articles which were set aside, appropriated, delivered to the carrier, and bill of lading transmitted. The title to the goods in question may ripen into a complete title, though they are not as contracted for, yet are accepted by the vendee, who later may pursue his remedy for breach of warranty on failure to deliver the quantity called for in the contract, or through laches the law may presume an acceptance; or, when the goods reach their destination, are found to be as contracted for. As was said by Mr. Justice WILLIAMS, in Fogel v. Brubaker, 122 Pa. 7: "In the second class, the sales are made by sample or by description, the goods not being seen by the purchaser until they have been selected and forwarded by the seller in pursuance of the previous contract or order from his customer. The rule in these cases is not caveat emptor, but caveat venditor, for the duty of selecting and sending the article ordered by

description or from sample is on the seller. The buyer is dependent on his good faith in the premises. If the article selected and forwarded by the seller is not of the kind ordered, or if, being of the kind ordered, it is not merchantable in quality, the buyer may refuse to accept it and give notice to the seller." Did the vendor comply with this contract? This question is for the jury. When the vendee in the exercise of its right of inspection discovered short weight of the contents, it took the position that it had not received what it contracted for; that the plaintiff violated the oral understanding. From the contract and the order describing what goods were to be shipped, with the weights as therein mentioned, the trial court could not, as a matter of law, hold that the order to ship so many barrels of nomordust 200 pounds to the barrel meant that the wooden barrels holding or inclosing the contents should be added to the weight of the contents to complete the plaintiff's contract. When this question was raised to enable the court to arrive at a true understanding between the parties it must, of necessity, resort to oral testimony. This disputed matter and the evidence as to the number of men to be sent to advertise and work up the trade, was submitted to the jury by the trial court. We will later refer to some of the appellant's evidence that was rejected in which we feel that the court erred. But, assuming that all of this evidence had been admitted, and the jury, by its verdict, found that the plaintiff had complied with all the terms of the contract, the defendant nevertheless refused to accept the goods. We then have the proposition that where goods are ordered by description to be sent from a distance, separated from bulk, appropriated for the purpose of the vendee, and delivered to a common carrier, the bill of lading transmitted to the vendee, the vendee inspects and refuses to accept the goods, the vendor is promptly notified by the vendee and by the common carrier, the vendor declines to recognize these notices or assume responsibility for the goods and sues

to recover the contract price,—what is the measure of damages?

It must be remembered that this is an ordinary article of commerce, that it has not been specially manufactured for the vendee, not sold by sample, analysis, or warranty, other than the implied warranty as to quantity, nor an article of commerce where the contract between the parties surrounds it with conditions as to quantity, quality, time and character of sale, as to place it in the category of sales of specific articles, but is such an article of commerce which is on the market, unaffected by special or unusual conditions. The general rule is that the measure of damages for refusal to receive and accept goods not specific, which the defendant has contracted for, is the difference between the contract price and the market value. This rule seems to be of universal application throughout the United States: 35 Cyc. 592. It is not our purpose to depart from it. The rule does not deal with all the questions which concern the measure of damages to apply to the facts in this case. The appellant urges that the general rule should prevail, that the vendor should have taken possession of the property and recovered under the general rule, or, if that was not possible, should have sold it and recovered the difference between the selling price, less expenses, and the contract price. We have stated the condition of the title that passed to the purchaser, subject to its right of inspection. When the goods were separated and appropriated by the vendor, steps were taken by the vendor to place the title in the vendee. The delivery to the carrier was evidence of appropriation and had the effect of placing the goods constructively in the possession of the vendee, the carrier being the vendee's agent. The bill of lading was the paper title by virtue of which the consignee could secure or claim the goods upon their arrival at their destination. The title was prima facie in the vendee to such an extent that he could have recovered

for their loss in transitu. This condition of affairs existed when the goods reached their destination and it was found that the goods were as contracted for and the condition upon which the title rested no longer existed. The prima facie title was a complete title, dating back to the time of delivery to the common carrier.

It is quite clear that had the vendee been at Jersey City and selected the goods this selection and their appropriation would have been an acceptance on the part of the vendee; it could not have raised the question of acceptance when the goods arrived at their destination. See Conard v. Penna. Railroad, 214 Pa. 98, where Mr. Justice MESTREZAT speaks on the acceptance of chattels.

The position of the appellant that the contract was executory until accepted cannot be sustained. Whether it is executory depends on the understanding between the parties, what acts they did in pursuance of that understanding and the legal effect of those acts. The notice to the vendor by the vendee and the railroad company of the rejection of the goods would not place them in the vendor's possession, nor is it sufficient to divest the title securely lodged in the vendee in fact, as well as by his possession of the bill of lading. Had the goods not been as contracted for, this notification to the vendor, would have been sufficient to divest whatever title might have been in the vendee, by reason of the delivery of the goods to the common carrier and the possession of the bill of lading. A notice, under those conditions, would have been imperative on the part of the vendee to relieve it from liability. Further, on the question of complete performance, it would hardly be just to require the vendor against its will to retake the property when in the ordinary course of business its place would have been supplied by property of like kind. The act of the vendee may have prevented its sale to another purchaser; to have the vendor hold it subject

to the possibility of future sale requiring time and additional expense, and the additional risk in keeping it, all brought about by the vendee's acts, would impose such an additional hardship not in harmony with the equities of the case. Why should the vendor be called upon to do that which the vendee could very well do, sell the property at his own risk, as the present condition was created by the vendee's deliberate wrongful act. Ballentine v. Robinson, 46 Pa. 177, was a sale of a special article yet the reasoning is applicable to the present case. In Unexcelled Fire Works Co. v. Polites, 130 Pa. 536: "Whilst the manifest tendency of the cases in the American courts, now, is to the doctrine that when the vendor stands in the position of a complete performance on his part, he is entitled to recover the contract price as his measure of damages." The vendor stands in the attitude of complete performance when he has done all he can possibly do to complete his contract and in addition the possession and evidence of title have passed from him. This is one of the cases relied upon by the appellant. In it the purchaser countermanded the order before the goods left the shipping point. The measure of damages applied in that case was based upon that fact. The learned justice states that the purchaser had revoked the carrier's agency and that the order countermanding was a repudiation of the entire contract. The vendor had parted neither with title nor possession. In Jones et al. v. Jennings, 168 Pa. 493, relied upon by appellant, this case was based upon the doctrine as enunciated in Unexcelled Fire Works Co. v. Polites, supra, as decisive of the question before the court at that time. Jones v. Jennings was a sale of scrap iron, delivery to be made in defendant's yards. The case does not discuss the principle of constructive possession, or title arising from delivery to a common carrier at a distance, and the transmission of the bill of lading. Title, delivery and acceptance were all concurrent acts. The measure of damages there adopted followed the general rule. The

present case bears a very close analogy to the case of Edson v. Magee, 43 Pa. Superior Ct. 297, and Mitchell v. Baker, 208 Pa. 377.

The contract price, being the measure of damages adopted by the trial court, was the correct one under the facts of this case. The vendor might have retaken the goods and thereby elected to select the general rule as his measure of damages. He did not see fit to do this. The first, eighth, ninth, and tenth assignments of error are overruled.

There was sufficient evidence before the court to have warranted the jury in finding that the man sent by the plaintiff to work up the package trade was the plaintiff's agent. He came to the defendant with a general knowledge learned in the plaintiff's business, being one of the plaintiff's employes, and reported progress of his work to the plaintiff, as indicated by the letters in evidence, where he is spoken of "we are in receipt of reports from our Mr. Conway, who is working your territory, and he advises us, etc." The letter which this employee took to the defendant indicated that general instructions had been given him as it inquired of the defendants if they had any special instructions to give before the man started with his work. If then, as the plaintiff's agent, within his undoubted authority and in pursuance of the understanding between the parties, he sold goods for the defendant, the manner in which these sales were made and what he did should have been admitted in evidence as acts interpreting how one of the parties to the contract understood or regarded it. The nature of the contract in dispute is such that the widest investigation, permissible under the rules of evidence, should be afforded. It may be a business proposition that the weight of the wood surrounding the contents should be included in determining the weight of the contents the vendee was to receive; and if the appellant agreed to this he of course would be bound by his agreement; but the Act of April 11, 1850, P. L. 452,

par. 3, would certainly prevent him from imposing on his customers "packages represented to contain a certain number of pounds," which they did not contain, or subject him to the penalty of the Act. The instructions asked for bearing on these acts should have been given and the learned trial court fell into error by rejecting the testimony covered by the second, third and fourth assignments of error, and the failure to instruct the jury as requested by the sixth assignment of. error. These assignments are sustained.

The court was clearly right in refusing the defendant's fifth point. If the appellant regarded the sending of these two men as vital to its cause, it had an opportunity to cancel the entire arrangement before the car was shipped. The court covered the instructions asked for in this point in its general charge and permitted the jury to determine this question. The fifth assignment of error is overruled.

If the appellant foolishly entered into a contract to purchase goods which, if sold as purchased, would be a violation of the law, it was for the appellant to see that the law was not violated, even if it was necessary to supply the additional pounds to make up the contents called for in the packages. The seventh assignment of error is overruled.

Judgment reversed and a venire facias de novo awarded.