# Dolan Mercantile Co., Appellant, *v.* Marcus et al.

*Contract—Sales—Delivery—Delivery to carrier—Acceptance— Act of May 19, 1915, P. L. 543—Pleading—Practice, C. P.—Book-account.*

1. Section 4 of the Sales Act of May 19, 1915, P. L. 543, which provides a sale of goods of the value of $500 or upwards shall be unenforceable "unless the buyer accepts part of the goods......and

actually receives the same," is not satisfied by delivery to a common carrier.

2. Under the act, title and possession must be in the unrestricted control of the purchaser, so as not to permit any recall or rescission. Such control may be interfered with by the right of the vendor to exercise his right of stoppage in transit; and the vendee's right to inspect and reject may interfere with acceptance.

3. Suit on a book-account does not obviate the necessity of averring a contract when the obligation is predicated on a sale made in pursuance of a contract. To hold otherwise would defeat the Sales Act.

Argued October 18, 1922. Appeal, No. 10, Oct. T., 1922, by plaintiff, from judgment of C. P. Allegheny Co., July T., 1921, No. 1513, for defendants on affidavit of defense in nature of statutory demurrer, in case of Dolan Mercantile Co. v. Jacob Marcus and Benjamin Marcus, doing business as Marcus Brothers. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on book-account for goods sold and delivered. Before STONE, J.

The opinion of the Supreme Court states the facts.

Judgment for defendants on statutory demurrer. Plaintiff appealed.

*Error assigned* was judgment, quoting record.

*O. S. Richardson,* with him *W. D. B. Rogers,* for appellant, cited: Hine v. Horn, 30 Pa. Dist. Rep. 499.

*Joseph Stadtfeld,* with him *Jacob Levin,* for appellee, cited: Mason-Heflin Coal Co. v. Currie, 270 Pa. 221.

OPINION BY MR. JUSTICE KEPHART, January 3, 1923:

The Uniform Sales Act provides, in section 4, that a contract to sell goods of the value of $500 or upwards shall be unenforceable "unless the buyer accepts part of the goods......so contracted to be sold or sold, and

actually receives the same." Section 46 provides that where, in pursuance of such contract or sale, the seller is authorized or required to send the goods to the buyer, delivery to a carrier for the purpose of transmission is deemed delivery to the buyer.

The contract was not in writing. It provided for the sale of six hundred bags of sugar at $20 per bag, f. o. b. Chicago, to merchants in Pennsylvania. It is now urged delivery to the carrier satisfied section 4 of the Act. It is undoubtedly true that, for a great many purposes, delivery to the carrier transmits title and possession to the purchaser, enabling him to recover for damages arising from loss or intermeddling. See Sales Act of 1915, P. L. 543; Dannemiller v. Kirkpatrick, 201 Pa. 218, 224; Mitchell v. Baker, 208 Pa. 377, 379.

The purpose of the act was to establish uniformity of usages and customs in trading throughout the United States, so that, where any buying and selling is engaged in, the parties may know their rights and liabilities, no matter where the contract is made. The act embodies simple rules founded on the prevailing trade usages and customs, and is intended to produce certainty in dealing, to promote freedom of exchange and flexibility in all matters pertaining to buying and selling. We may here note, the statutes of Illinois and Pennsylvania are the same as far as they control the subject-matter of this controversy.

Section 4 was intended to strike down sales not evidenced by writing, where the price exceeds $500. This provision may have been necessary as the outgrowth of the many uncertainties in, or failure to clearly understand, the terms of a parol contract of sale or sales— more frequently to prevent deliberate overreaching. Whatever the impelling motive, the legislature has laid down this rule for business engagements, which we are bound to follow. It uses definite, precise language to express the controlling requirements, and exemptions therefrom. Under the words "accept part......and

actually receives the same," two distinct acts by the vendee are essential. While the Sales Act holds delivery to a carrier is delivery to the purchaser, it does not satisfy section 4, though it may be complete for other purposes of the law. If delivery to a carrier is sufficient to meet the section's requirements, the many difficult situations presented by parol sales would be continued, and such construction would thwart its purposes. Delivery must be accompanied by an actual receipt and acceptance of the goods, or at least such possession and assent to ownership of which the property in its nature is susceptible. Title and possession must be in the unrestricted control of the purchaser, so as not to permit recall or rescission. Any right outstanding in the vendor, the assertion of which would be sufficient to cause title and possession to be reëstablished in him, would so operate on the sale as to exclude it from the exemption, and must be condemned. Any right in the vendee, the assertion of which challenges the execution of the contract, would effect a similar result.

In delivering goods to a carrier, the vendor has the right of stoppage in transit if the vendee is insolvent or in failing circumstances. He may retake the goods before actual receipt or acceptance, to protect his claim. When goods are delivered to a carrier for delivery to a vendee, while the property may be in the vendee for many purposes, his dominion is not absolute. The vendee has the right to inspect and reject if the goods are not as ordered, or he may "accept" them. The latter is necessary to bring a parol sale within the exemption. The buyer must assent to become the owner, and acceptance has nothing to do with possession or delivery. This right to examine may ultimately defeat the contract or sale, and it would, if exercised adversely, where the goods are not of the kind, quality or quantity purchased. It may be said, if the latter condition existed, there was no contract or sale. We are dealing, however, with the different outstanding rights

that may affect a sale made in violation of section 4, the enforcement of which would preclude receipt and acceptance. To prevent the possibilities that may arise because of these outstanding deficiencies affecting property while in transit, and to shut out questionable receipt and acceptance, which otherwise might be sufficient to bring the contracts within the exemption, the legislature used precise words to interdict such sales. To actually receive necessitates an actual rather than a constructive receipt: 4 A. L. R. 920, 921. "'Actually' means 'as an actual or existing fact'; and the word 'actual' is used as 'opposed to constructive'": Maguire v. James Lees & Sons Co., 273 Pa. 85, 88. As we construe the language of section 4, it means delivery to a common carrier is not actual possession and assent to become the owner by the buyer, or a waiver of the right to stop in transit by the seller; it is not such unrestricted control over the property by the buyer that brings the sale within the exemption. There must be some affirmative action by him indicative of an intention to receive and accept. See Williston on Sales, 84, 91, 97, 844; Williston on Contracts 1049, 1057, 1064. Delivery to a carrier does not take the transaction out of the operation of the statute; it is not a sufficient receipt and acceptance by the buyer; though he designates the carrier as agent to receive, he must still accept: 25 R. C. L. sec. 252, page 630 (note 13); sec. 253, page 631 (note 14); 27 C. J. 251, sec. 293. Setting aside a carload lot by a vendor to be shipped will not suffice: Peck v. Abbott, 223 Mass. 423, 424.

There is no merit in the contenton that suit on a book-account obviates the necessity of averring a contract when the obligation is predicated on a sale made in pursuance of a contract. This would be a novel way to circumvent the Sales Act.

Judgment affirmed.