## EASLEY *v.* STEWART *et al.*

[95 South. 525. No. 23082.]

1. FRAUDS, STATUTE OF. *Agreement by seller to hold personal property for buyer as agent until called for held not within statute; "delivery."*

   Under section 4779, Code of 1906 (Hemingway's Code, section 3123), providing that a contract for the sale of personal property for the price of fifty dollars or more shall not be valid unless the buyer shall receive part of the property, or shall actually pay or secure the purchase money or a part thereof, or unless the contract be in writing and signed by the party sought to be charged in a case where the value of the property is more than fifty dollars, and the contract is not in writing, and no part of the purchase money paid or secured, and delivery is relied on to take the contract out of the statute, *held,* that an agreement merely on the part of the seller to hold the property for the buyer as his agent or bailee, to be called for when the buyer chooses, does not constitute a sufficient delivery and acceptance to comply with the statute.

2. FRAUDS, STATUTE OF. *Applies with equal force to contract for resale of personal property.*

   The statute applies with equal force to a contract of the resale of personal property from the original purchaser to the original seller.

3. FRAUDS, STATUTE OF. *Deals primarily with the contract for sale of personal property, rather than its transfer.*

   The statute does not undertake to deal primarily with the transfer of the title to personal property, but with the contract of sale, and applies to all contracts for the sale of personal property, including a contract of resale by the original purchaser to the original seller, where the latter holds the naked legal title as security for the purchase money under said original contract of sale.

Appeal from chancery court of Amite county.

HON. R. W. CUTRER, Chancellor.

Suit by Eugene Easley against Mrs. J. T. Stewart and others. From a decree for defendants, plaintiff appeals. Reversed, and judgment for plaintiff.

*W. B. Mixon* and *F. H. Lotterhos,* for appellant.

A contract for the sale of any personal property, goods, wares or merchandise for the price of fifty dollars or upward, shall not be allowed to be good and valid unless the buyer shall receive part of the personal property, goods, wares, and merchandise, or shall actually pay or secure the purchase money, or part thereof, or unless some note or memorandum, in writing, of the bargain be made and signed by the party to be charged by said contract, or his agent thereunto lawfully authorized." Sec. 4779, Code of 1906; Sec. 3123, Hemingway's Code. The uncontradicted testimony shows that the property was worth three hundred twenty-five dollars, or certainly more than fifty dollars and that Easley did not receive part of the cattle, did not actually pay or secure the purchase money or part thereof, nor did he, or any one else for him, sign a note or memorandum in writing of any bargain made. This being true the contract, if any were made, shall not be allowed to be good and valid, according to the code section quoted above.

A contract within the statute is absolutely void: *Daniel* v. *Frazer,* 40 Miss. 507; *Young* v. *Alexander,* 123 Miss. 708. According to the last-named authority, Easley would have been required to receive the property or a part of it with the intent to become the owner. If he made the agreement testified to by the witnesses introduced by the appellees not having made payment or signed a memorandum of the bargain, the contract was void unless Easley was willing to receive and did receive the property or a part of it with the intent to become the owner thereof. His testimony and his conduct indicate clearly that if he made a contract, which he did not seem to realize he was doing, he certainly did not intend to take the property and become the owner.

A case like this was presented in *Ladnier* v. *Ladnier,* 90 Miss. 475, where there was oral evidence of the sale of a flock of sheep, without payment by the purchaser, and re-

liance was had on the fact that three lambs, which were not of the flock, were delivered. This court said that the agreement was within the statute and void. An agreement to deliver the cattle in consideration of the surrender of the note or credit thereon of the amount of the indebtedness, was void unless the note should be actually delivered or unless the credit had been actually made thereon.

At page 254 of Vol. 27, Corpus Juris, it appears that: "There must be an actual cancellation and discharge of the indebtedness to the extent of the purchase price, on the books of the creditor or a written receipt executed by him, or some other like unequivocal act not resting in mere words which will bind him."

*R. S. Stewart,* for appellees.

The appellees submit that if the contract was a contract of sale at all, and if it falls within the statute of frauds, then the evidence shows a sufficient delivery of the property and the acceptance of the same sufficient to satisfy the statute, but appellees contend that the agreement was not a contract of sale at all, but a mere rescission of the original sale, and that the sale by the appellant to the decedent, J. T. Stewart, was not a completed sale, and that the title to the cattle according to the note upon which the appellant based his claim against the estate of the said Steward, never vested in the said estate at all, and that said property was never in fact the property of the estate at all, it having a mere equity therein, and that therefore, if there was no actual delivery of the cattle, the statute of frauds cannot avail, for the property was Easley's, the appellant.

"Title to oxen, sold under an agreement that same should not pass until the price of the animals was paid, will not vest in purchaser until such payment." *Pecan Lake Mill Co.* v. *American Cooperage Co.,* 15 So. 580. "Under a contract of sale of timber to be paid for in a horse, the title to remain in the purchaser of the timber until the timber was actually delivered, the horse remains

the property of the original owner until paid for." *Kerl* v. *Smith,* 96 Miss. 827.

"Where plaintiffs loaned the defendant money with which to purchase a mule, taking a note therefor which stipulated that the consideration was for a mule, the title to which remained in the seller until paid for, the mule was the property of the payee." *Burkhalter* v. *Mitchell and McLendon,* 107 Miss. 92.

The appellees therefore submit that the property, the twenty-four head of cattle sold, were Easley's on the 24th day of December, and that when he agreed to accept the same in lieu of the note, it was not a contract of sale or purchase at all, and no delivery, payment of price or memorandum was necessary to make it valid and binding.

The evidence shows that all the cattle were there on that date with the exception of one that had been traded, and that the appellant ratified the trade made of his cattle and accepted those traded for in lieu of his that had been traded. It is well settled in our jurisprudence that the reservation of title is in fact and in effect more than the ordinary security, for if Stewart or his heirs had disposed of any of the property even to a *bona-fide* purchaser, the right of the appellant to retake it whenever found would have been absolute, on the theory that the property was already his. If already his, and the cases above cited so hold, how could he rebuy the same, or how could the agreement to accept his property back in consideration of the cancellation of the note, be considered a sale?

By whatever name the appellant or counsel may deem best to call the agreement, it was, in view of the fact that the appellant already held title in the property but a rescission of a conditional sale, and not a contract of sale, and therefore, does not fall within the statute of frauds, although there was a sufficient delivery shown to take it out of the statute or meet the statute, should it have been a straight out and out sale.

ANDERSON, J., delivered the opinion of the court.

Appellant, Eugene Easley, probated a promissory note for three hundred twenty-five dollars, payable to himself against the estate of T. J. Stewart, deceased, which note was executed by said decedent. The allowance of said note was contested by the representatives of said estate, and the chancery court rendered a decree in favor of said estate disallowing the same, from which appellant prosecutes this appeal.

The case, stated most strongly for the estate of said decedent, is as follows: Said decedent, J. T. Stewart, in his lifetime purchased from appellant twenty-four head of cattle, for which he agreed to pay appellant at a future date three hundred twenty-five dollars, and executed his note accordingly, in which note appellant reserved the title to said cattle until paid for. Stewart died without paying the note, or any part of it. Before his death he had received from appellant and had possession of the cattle. Said decedent died intestate, leaving surviving him a widow and several children, most of whom were minors. Some time after his death appellant had a conversation with the widow and a brother of her's, Mr. Causey, in which she and her brother proposed on behalf of Stewart's estate that the said cattle trade be canceled by the cattle being returned to appellant and appellant surrendering said note for their purchase money. The cattle were located on the farm and near the home of said decedent. Appellant went to look at the cattle with said brother of the widow of said decedent, and, after seeing them, said that he would take them back and surrender the note. The cattle were pointed out, but were not segregated from other cattle belonging to said estate. The evidence on behalf of said estate showed, however, that it was understood and agreed that appellant would take the cattle back, and at a future date would surrender the note, the note not being in his possession at the time, and it was agreed further that for a time, which was not definitely fixed, the cattle should remain in pos-

session of the widow of said decedent commingled with the cattle belonging to his estate. Appellant in his testimony denied any such agreement. Shortly after this alleged agreement appellant demanded payment of the note, and later probated it against the estate of said decedent. The value of the cattle was more than fifty dollars.

The transaction being covered by the statute of frauds (section 4779, Code of 1906; section 3123, Hemingway's Code), the question is whether or not said statute was complied with in the making of the contract of rescission of sale of the cattle involved. The statute provides:

"A contract for the sale of any personal property, goods, wares, or merchandise, for the price of fifty dollars or upward, shall not be allowed to be good and valid unless the buyer shall receive part of the personal property, goods, wares, and merchandise, or shall actually pay or secure the purchase money, or part thereof, or unless some note or memorandum, in writing, of the bargain be made and signed by the party to be charged by such contract, or his agent thereunto lawfully authorized."

It will be observed from the statement of the case above that the note for the purchase money of the cattle was not in fact surrendered by appellant, that he only promised to surrender it, nor were the cattle, or any part thereof, delivered to appellant, unless such delivery resulted from merely seeing them and the statement when they were tendered to him that he agreed to take them back and would take them away at a future date. It will be observed further that the entire contract with reference to the alleged resale rests in parole, and that there was no visible physical change whatsoever, either in regard to the note or the possession of the cattle. This question is discussed in 25 R. C. L. section 239, p. 622, and the authorities cited to support the text. It is there stated that, if the property sold is handed to the buyer and by the latter immediately handed back to the seller to hold for him until the price is paid, this is not a sufficient delivery and ac-

ceptance to take the transaction out of the statute of frauds, and that an agreement merely on the part of the seller to hold the property for the buyer, as his agent or bailee, to be called for when the buyer chooses, does not constitute a sufficient delivery and acceptance. The principle is illustrated there by the sale of a large quantity of sugar which remained in the seller's warehouse and under his control; the agreement between the parties being that the sugar should be kept in storage by the seller for the buyer. It was held 'that this was not a sufficient delivery and acceptance. The point is, some physical change must take place that is susceptible of being proven. If when the alleged agreement is completed the status of the property is exactly the same with reference to its physical possession as it was prior to the agreement, there is no delivery under the statute. As we understand, this is what the court held in *Ladnier* v. *Ladnier*, 90 Miss. 475, 43 So. 946. And this principle applies with equal force to a contract of resale, where the original purchaser has possession of the property. 27 C. J., section 253, p. 237.

It is contended, however, on behalf of appellees that the statute has no application in this case because by the terms of the note in question appellant already had the title to the cattle, and that therefore no physical change in the possession of the property was necessary in order to transfer the title in appellant. But a complete answer to this contention is that the statute does not undertake to deal primarily with the transfer of the title to the property, but with the contract for its sale. The statute declares that no contract for the sale of personal property shall be good and valid unless a part of the purchase money is paid or a part of the property is delivered to the buyer, or a memorandum of the contract be in writing, signed by the party sought to be charged. It is the contract itself that is outlawed by the statute. The question of title is incidental. The question is whether or not a valid contract has been made for the sale of the property. The statute applies to all contracts for the sale of personal property,

including executory contracts by the terms of which the title is not to pass until some time in the future. It has been held that the statute applies to a sale of one of several owners of property in common to another of his undivided interest. In such a case, of course, the title to the property is in all of the owners jointly. 27 C. J., section 261, p. 237.

Reversed, and judgment here for appellant.

*Reversed.*