Becker Pretzel Bakeries, Inc., v. Loefflad

*Robert J. Doran,* for plaintiff.

*John H. Collins* and *J. Campbell Collins,* for defendant.

PINOLA, J., February 28, 1957.—We have for consideration defendant's motion to lift a nonsuit granted as to his counterclaim.

Plaintiff sued in assumpsit to recover $13,665.98 for merchandise sold to defendant. The latter set up a counterclaim for $16,000, claiming that plaintiff had agreed to pay that amount for defendant's distributing business. Plaintiff offered in evidence the admissions in the pleadings and then rested. Whereupon defendant, because there was no writing, attempted to prove part performance of the contract.

In his counterclaim, he averred:

"In addition to said payment as aforesaid, and to obtain something in earnest to further bind said sale, the plaintiff on or about January 25, 1954, by its said duly authorized agents and representatives, requested the defendant to permit the plaintiff to look over, investigate and examine the books of account of the defendant pertaining to said distributing business and pertaining to the defendant generally. The defendant orally gave said permission to the plaintiff.

"Pursuant to said permission of the defendant, the plaintiff, through its duly authorized agent, Mr. Lynch, looked over, investigated and examined the defendant's books of account pertaining to said distributing business and pertaining to the defendant generally. Mr.

Lynch, the said duly authorized agent and representative of the plaintiff, examined said books for more than three days pursuant to the permission given by the defendant to the plaintiff in earnest and in good faith to bind said sale."

At trial defendant testified differently from this sworn statement. He testified that in January, 1954, Mr. Mullinix, a representative of plaintiff, suggested that perhaps plaintiff would be interested in buying defendant's business, that within a short time, Frank Elsey, the president, called defendant by phone and came to Wilkes-Barre on or about January 15, 1954. After inspecting and reviewing the assets of defendant's business, consisting of trucks, routes, including customer list, cans and racks, a figure of $16,000 was determined as the fair selling price.

On January 23, 1954, Elsey agreed to purchase the business for that price, and said he would "have someone up next week to take over." The next day he called and said that a man would be sent up to take over. On the following Wednesday, Elsey called from Cincinnati and said that a Mr. Burke "was to arrange for someone to come up to take over."

Mr. Loefflad testified on direct examination, as follows:

"Q. And what did you hand over and deliver to him?
"A. The books.
"Q. The books of what?
"A. The books of the distributing.
"Q. The distributing books?
"A. That's right.
"Q. And what information did they contain?
"A. It contained everything. It contained all the sales, routes and everything. The amount of trucks, what the trucks were doing and the business that was being done.

"Q. And did he make any copy of the set up of the books?

"A. Yes, he did. He copied the entire set up and took it back to Baltimore.

"Q. On a separate sheet?

"A. On a separate sheet."

Catherine Loefflad, the wife, testified:

"Q. Well, what did he do in the office?

"A. He went all through the books.

"Q. The books of the distributing?

"A. The distributing. He copied everything down. He took our whole set of books right over, and he came in there from eight o'clock in the morning until five and six o'clock at night."

She was then asked why the Loefflad accountant was present, and she answered: "To make sure to look over the books and the sales."

She testified further:

"Q. Didn't he examine the books financially?

"A. No, not financially, no. Mr. Lynch went through the books about the routes and the sales to see how much business we were doing because they were taking over and that is what he came up for."

According to Mr. Loefflad, Lynch copied all the information on a sheet. According to his wife, he copied all the books.

On cross-examination, Mr. Loefflad testified that he was selling the distributing business, which consisted, among other things, of routes, that is a list of the customers which purchased his products, and the good will.

He testified further that he had the customers' list in his possession and could deliver it.

When asked whether the customers' list was the same one which he had when plaintiff talked to him, he replied: "That's right".

Not having heard from plaintiff for approximately two weeks, defendant went to Baltimore and there

learned that plaintiff company did not intend to purchase the business.

When defendant rested, counsel for plaintiff moved to strike all the testimony of the alleged contract because of a material variance between the allegation in the counterclaim and the testimony, and also asked that judgment be entered for plaintiff. After considerable discussion, the trial judge permitted an amendment of paragraph 11 which reads as follows:

"On or about February 1, 1954, pursuant to the contract of sale above averred, the defendant turned over and delivered to Mr. Lynch, a duly authorized agent of the plaintiff company, the books, records and matters pertaining to the customers' lists, routes, sales, and in general pertaining to the distributing business of the defendant, which was part of the property sold, and said books, records and matters pertaining to the customers' lists, routes, sales and in general pertaining to the defendant's distributing business were accepted. by the said representative of the plaintiff company."

The trial judge concluded (1) that the pleadings did not aver facts necessary to show compliance with The Sales Act, and (2) that there had been no delivery and acceptance of any part of the "goods" contracted to be sold, and therefore granted plaintiff's nonsuit as to the counterclaim. Defendant then moved to lift the nonsuit.

This transaction is regulated by The Sales Act of May 19, 1915, P. L. 543, which was in effect at the time. Section 4, 69 PS §42, provides as follows:

"A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind

the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

And paragraph third of section 4 declares:

"There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, or any part thereof, expresses by words or conduct his assent to becoming the owner of those specific goods."

These two paragraphs of section 4 have been construed many times.

Considering first the pleadings, we note that the amended paragraph 11 avers delivery of "the books, records and matters pertaining to the customers' lists, routes, sales, and in general pertaining to the distributing business of the defendant, which was part of the property sold", and that the books were accepted by the representative of plaintiff. There is no averment that the buyer did "actually receive" part of the goods contracted to be sold. This is fatal.

In Northwestern Consol. Milling Co. v. Rosenberg, 287 Fed. 785, C. C. A., 3rd Cir., we have a similar situation. There plaintiff averred that it had shipped flour from Minneapolis to Philadelphia, where, upon arrival, it " 'was duly delivered by the carrier, which was the agent of the defendants, to the Delaware Avenue stores of the Pennsylvania Warehousing and Safe Deposit Company, also the agent of the defendants', and that when the flour was so delivered to the warehousing company, 'who received it on behalf of the defendants, the defendants, following receipt of notice of the arrival of the goods, called at the Delaware Avenue stores and examined and accepted the flour' ". Judge Woolley declared, page 788:

"In endeavoring to bring its case within the exception of the statute, the plaintiff stopped with the aver-

ment of acceptance of the goods by the defendant. Whether this averment, so far as it affects the requirement of acceptance alone, is sufficient we are not called upon to decide, because, whether sufficient or insufficient, 'the plaintiff failed to make an averment of the next requirement of the exception that the buyer did 'actually receive' the goods.

"The only approach to an averment that the defendants actually received the goods was the plaintiff's statement that the goods were 'delivered' to the warehousing company, 'as agent of the defendants'. . . . Whatever force may be given the plaintiff's averment of acceptance of the goods, the plaintiff not only failed expressly to aver actual receipt, but, by the averment last quoted, conclusively showed that the defendants did not actually receive the goods, because the plaintiff refused to allow the defendants actually to receive them until they had paid its draft."

In the course of the discussion of the provisions of the statute relating to acceptance, Judge Woolley declared, page 788:

"For more than two centuries this exception of the statute has been a fruitful source of discussion in the courts of England and America where many subtle distinctions have been raised and many irreconcilable decisions rendered. The principal difficulty has centered in the meaning of the term 'accept' as used in the statute. Although some courts have held that the terms 'accept' and 'actually receive' are synonymous, it may now be regarded as definitely settled that these terms have distinct meanings and that both acceptance and actual receipt, which imply delivery, are essential to take a case out of the statute. See cases, 25 R. C. L. 620, 622."

To the same effect, see 49 Am. Jur. 588, §272.

It is elementary that in every case: "Proof must conform to the facts alleged. A plaintiff cannot allege

one set of facts and recover upon another. . . . Neither allegations without proof nor proof without allegations nor allegations and proof which do not substantially correspond will entitle a plaintiff to recover unless such defect be remedied by amendment": Anflick v. Gruhler, 353 Pa. 470, 472.

In Vitro Mfg. Co. v. Standard Chemical Co., 291 Pa. 85, 97, the court made it clear that the complaint "must, of course, be self-sustaining, and, to that end, it must contain all facts necessary to a recovery; in a case like the one before us, it must not only aver facts which show a consummated contract, but also 'all the facts necessary to show compliance with the requirements of section 4 of the Sales Act'."

It concluded that the statement of claim failed to aver actual delivery and acceptance by the purchaser of part of the goods. See also Leonard v. Martling, 378 Pa. 339, 343.

Even as amended, the complaint here is defective.

We believe the trial judge properly entered the nonsuit for the further reason that there was no delivery and acceptance of "part of the goods" contracted to be sold.

In the light most favorable to defendant the testimony shows that he allowed plaintiff's agent to examine the books of the distributing business and to copy the same. The books themselves remained in the custody of defendant.

Under the express language of the statute, a receipt and an acceptance of part of the *property sold* must be had to render the contract enforceable: 37 C. J. S. 632, §143.

To constitute an acceptance and receipt satisfying the statute of frauds, there must be a surrender by the seller of all dominion and control over the thing sold, and an acceptance and receipt by the buyer with intent to appropriate it absolutely as his own; the

transaction must be of such a character as unequivocally to take the property from any control over it by the seller and place it under the absolute and exclusive dominion of the buyer: 37 C. J. S. 633, §148.

The acceptance required by the statute is some act or conduct by the buyer manifesting an intent to appropriate the property to his own use and *to hold the specific goods as the owner* thereof.

The receipt may be made with an entirely different intent than to take possession as owner, in which case the receipt is not sufficient to satisfy the statute.

It is sometimes said that the receipt which is required by the statute must involve some physical change that is susceptible of proof.

In Dolan Mercantile Co. v. Marcus, 276 Pa. 404, the court said, page 407:

"Delivery must be accompanied by an actual receipt and acceptance of the goods, or at least such possession and assent to ownership of which the property in its nature is susceptible. Title and possession must be in the unrestricted control of the purchaser, so as not to permit recall or rescission. Any right outstanding in the vendor, the assertion of which would be sufficient to cause title and possession to be reëstablished in him, would so operate on the sale as to exclude it from the exemption, and must be condemned. Any right in the vendee, the assertion of which challenges the execution of the contract, would effect a similar result."

And again, page 408:

"To actually receive necessitates an actual rather than a constructive receipt: 4 A. L. R. 920, 921. ' "Actually" means "as an actual or existing fact"; and the word "actual" is used as "opposed to constructive" ' : Maguire v. James Lees & Sons Co., 273 Pa. 85, 88."

In Brussell v. Maimon, 111 Pa. Superior Ct. 54, the court held, page 57:

"The machines were in excess of the value of $500; no earnest money or part payment was made; nor was a note or memorandum signed. The right of recovery therefore, depends on whether or not the buyer actually (1) accepted and (2) received these machines. These two distinct acts are necessary to take the case out of the statute: Dolan Mercantile Co. v. Marcus et al., 276 Pa. 404, 120 A. 396; Vitro Mfg. Co. v. Standard Chemical Co., 291 Pa. 85, 139 A. 615; Northwestern Consol. Milling Co. v. Rosenberg, 287 F. 785 (U. S. C. C. A. 1923); Clegg & Clegg v. Lees & Lees, 82 Pa. Superior Ct. 584."

When asked by the trial judge: "Now what part of the goods did you deliver?"

Mr. Collins, counsel for defendant, declared: "All our customer's lists, all the routes, trucks, tin containers. He copied them for three days."

There was no delivery of the trucks; there was no delivery of the tin containers. All that plaintiff did was to copy the customers' list from the books of defendant which remained in his custody and possession.

The observation made by the court in Entrekin v. Byrd, 149 Miss. 340, 115 So. 562, is peculiarly appropriate here:

"The receipt by the buyer contemplated by this statute is the taking of the property or a part thereof 'into his possession and control with intent to become the owner' (Young v. Alexander, 123 Miss. 708, 86 So. 461), and 'some physical change must take place that is susceptible of being proved. If when the alleged agreement is completed the *status* of the property is exactly the same with reference to its physical possession as it was prior to the agreement, there is no delivery under the statute.' Easley v. Stewart, 131 Miss. 756, 90 So. 525."

In Whittemore v. Gibbs, 24 N. H. 484, the question involved was whether an agreement to sell a promis-

sory note was within the statute of frauds. As the court put it:

". . . is a promissory note to be classed under the head of either goods, wares or merchandize, within the meaning of the statute of frauds, so that an agreement to sell the same must be in writing?

"So far as we have been able to discover, there are but few decisions to be found which bear directly upon this question, and those are not in unison with each other. A promissory note is neither goods, wares nor merchandize, in the common and ordinary sense of those terms. It is only by giving them a broad and unusual signification, that bills of exchange and notes of hand can be included; and such a signification we are not inclined to adopt. We think there is no occasion for extending the construction so as to include matters which are not within the well understood meaning of the statute; and the defence that the agreement to sell the note and mortgage was within the statute, cannot avail."

By no stretch of the imagination can "distribution information" and information as to "sales and routes" be regarded as "goods". In effect, this was information relating to the good will of the business. Its value is dependent upon the favorable consideration of defendant's customers. It is, therefore, intangible. See Smith v. Munizza, 170 Pa. Superior Ct. 122.

Since there is no averment in the complaint that part of the goods were "actually received," and as no "part of the goods" contracted to be sold were actually delivered and accepted, the nonsuit was properly entered.

Accordingly, we enter the following

*Order*

Now, February 28, 1957, at 3 p.m., the motion to lift the nonsuit in the counterclaim is denied.