## Moore, Appellant, *v.* Eisaman.

*Guaranty—Promise to pay the debt of another—Parol evidence—Act of April* 26, 1855, *P. L.* 308.

Under the Act of April 26, 1855, P. L. 308, no parol testimony can be admitted to establish a guaranty or engagement to pay the indebtedness of another when it exceeds $20.00. The entire contract must be in writing, and oral testimony is not admissible to add to or to supplement the writing in order to complete an insufficient written promise.

A defendant's liability on a guaranty of another's indebtedness cannot be established partly by parol and partly by written evidence; the whole agreement or memorandum thereof must be in writing. There must be a consideration to support the contract, but it is not part of the promise required to be in writing, and may be established by parol.

In an action on an alleged guaranty of a contract where it appears that the defendant had written at the end of the contract the letters "O. K." and then signed his name, parol evidence is not admissible to show that the plaintiffs relied on the writing as a guaranty, or that the parties acted on the understanding that the writing was a guaranty. The most that the plaintiffs could show by parol evidence was that the letters imported and meant a guaranty in trade circles.

Argued Oct. 14, 1901. Appeal, No. 33, Oct. T., 1901, by plaintiffs, from order of C. P. Westmoreland Co., May T., 1899,

No. 378, refusing to take off nonsuit in case of John A. Moore and Joseph C. Moore, trading as John A. Moore & Bro., v. J. R. Eisaman.   Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ.   Affirmed.

Assumpsit upon an alleged contract of guaranty.   Before Doty, P. J.

The facts are fully stated in the opinion of the Supreme Court.

*Error assigned* was in refusing to take off nonsuit.

*W. D. N. Rogers*, with him *Edward E. Robbins* and *John E. Kunkle*, for appellants.—We contend that the words " O. K.," prefixed to the signature of the defendant and written by him on the face of the contract, constitute "some note or memorandum; " and we further contend that we should have been given an opportunity to show, by the subsequent correspondence and conduct of the defendant, what significance he intended the abbreviation to have when he wrote it upon the contract.   This contention is supported by the case of Eilbert v. Finkbeiner, 68 Pa. 243.

If the terms are ambiguous, the ambiguity may be explained by such other aids as are allowable in other cases of ambiguous contracts ; and, if the ambiguity still remains, the language of the guaranty is to be construed most strongly against the guarantor, certainly to the extent that the creditor has in good faith acted upon and given credit to the supposed intent of the surety: Crist v. Burlingame, 62 Barb. 351; Belloni v. Freeborn, 63 N. Y. 383 ; Western New York Life Assurance Co. v. Clinton, 66 N. Y. 326.

The custom which controls the construction of a contract is the custom of the particular line of business to which the contract relates : Guillon v. Earnshaw, 169 Pa. 463 ; Davis v. Koenig, 165 Pa. 347 ; McCullough v. Ashbridge, 155 Pa. 166.

*W. A. Griffith*, with him *Vin. E. Williams* and *A. M. Sloan*, for appellee.—The parol evidence was inadmissible : Schafer v. Farmers' & Mechanics' Bank, 59 Pa. 144 ; Jack v. Morrison, 48 Pa. 113 ; Temple v. Baker, 125 Pa. 634 ; Hess's Est., 150

Pa. 350; Arnot's Admr. v. Symonds, 85 Pa. 102; Wilson v. Martin, 74 Pa. 161; Nugent v. Wolfe, 111 Pa. 471; Martin v. Duffey, 4 Phila. 75; McQuewans v. Hamlin, 30 Pa. 215; Tucker v. Bitting, 32 Pa. 431; Petriken v. Baldy, 7 W. & S. 430.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902:

B. F. Long contracted with the borough of Braddock in Allegheny county to pave certain streets of that borough with fire brick. Long entered into a written agreement with John A. Moore & Brother, the appellants, to furnish him the brick for this purpose. The agreement is dated July 1, 1890, and its terms required the brick to be delivered in Braddock by October 1, of the same year. After the execution of the agreement by the parties, Long took it to J. R. Eisaman, the appellee, and he wrote at the end thereof, " O. K.    J. R. Eisaman." The brick were furnished by the appellants according to the contract, and payments were made to them, aggregating between $12,000 and $13,000. Long became insolvent and was unable to pay the appellants the balance due them on the contract. To recover that balance, the plaintiffs on March 21, 1899, brought this action, alleging that the initial letters, " O. K.," written by the defendant on the agreement with his name subscribed thereto, constituted a contract of guaranty.

The defendant denies his liability as a guarantor. On the trial in the court below, the plaintiffs offered testimony to show that they relied on these letters, written by the defendant, with his signature attached, as a contract of guaranty, and that they understood such to be the meaning of the defendant's indorsement on the contract, and further, what the defendant intended by said indorsement. The court refused to admit the testimony, on the ground that it was an attempt to establish the defendant's liability by parol, and hence was not competent evidence under the statute of frauds. The plaintiffs also offered certain exhibits and oral evidence tending to show a consideration for the alleged contract of guaranty, to explain the letters " O. K.," and to show that the defendant recognized his liability as a guarantor under the writing signed by him. The court admitted the testimony for the purpose of showing the consideration of the alleged guaranty, but excluded it for the other

purposes for which it was offered.   The court also declined to permit the jury to determine the meaning of the letters, " O. K.," under the testimony in the case.   At the conclusion of the plaintiffs' testimony, a nonsuit was granted, which the court subsequently refused to take off.

The Act of April 26, 1855, P. L. 308, provides that there shall be no liability upon any special promise to answer for the debt or default of another, " unless the agreement or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him authorized."   Since the enactment of the statute it has been rigidly enforced by this court.   Its purpose was to prevent " fraudulent practices, commonly endeavored to be upheld by perjury," and to accomplish this purpose, a strict adherence to the requirements of the terms of the statute is necessary.   No parol testimony, therefore, can be admitted to establish a guaranty or engagement to pay the indebtedness of another when it exceeds $20.00.   The entire contract must be in writing, and oral testimony is not admissible to add to or to supplement the writing in order to complete an insufficient written promise. A defendant's liability on a guaranty of another's indebtedness cannot be established partly by parol and partly by written evidence, the whole agreement or memorandum thereof must be in writing.   There must be a consideration to support the contract, but it is not part of the promise required to be in writing, and may be established by parol.

The rulings of the trial court, above referred to, are the matters assigned for error.   They involve the right of the plaintiffs to show by parol the meaning of the letters " O. K.," written by the defendant at the end of the contract for the purchase of the brick, and the intention of the appellants and appellee in making and accepting the alleged guaranty.

While, as has been observed, the defendant could not be made liable to the plaintiffs on a parol guaranty, yet this did not prevent the plaintiffs from showing by parol testimony the meaning of the initial letters, " O. K."   Without the aid of extrinsic evidence, the letters could not be interpreted nor the use of them in the connection in which they were employed be understood.   It was, therefore, competent for the plaintiffs to show that the letters written on the contract by Eisaman imported

and meant a guaranty in trade circles.  Had it been shown that such was their signification in commercial usage, the parties would be presumed to have used them in that sense, and they would have constituted a written contract of guaranty.  We have, however, examined the evidence with care, and it fails to show that the common acceptation or meaning of the letters written by Eisaman at the end of the contract is that of a guaranty.  The most that can be claimed for the testimony is that it shows that such was the interpretation placed upon the letters " O. K." by the witness and by the appellants.  This is not sufficient and is not the proof required to support the appellants' offer.

It was not competent to introduce testimony to show that the appellants relied on the writing as a guaranty of Long's contract or, as has been said, that the parties to the alleged guaranty understood the contract to be of such a character.  The offer of parol testimony for such purposes is in itself an admission of the insufficiency of the written agreement to establish a guaranty, and discloses the necessity of such testimony to make the alleged guarantor liable to the appellants.  Parol testimony to show either the intention of the parties or that they acted on the understanding that the writing was a guaranty is supplying by parol a defective written guaranty which is prohibited by the statute of frauds.

The other questions raised in the case need not be considered.  The failure of the appellants to show a written guaranty was fatal to their right of recovery against the defendant, and the learned trial judge committed no error in withdrawing the case from the jury.

The assignments of error are overruled and the judgment is affirmed.