# Manufacturers Light & Heat Co., Appellant, v. Lamp et al.

*Contract—Sales—Uniform Sales Act of May 19, 1915, P. L. 543
—Evidence—Remedy—Essentials of writing—Part performance—
Payment—Specific performance—Equity.*

1. Statutes, such as the Uniform Sales Act of May 19, 1915, P.
L. 543, do not provide mere rules of evidence, but are limitations
upon the judicial authority to afford remedies.

2. The act requires that all the essentials of an agreement for
the sale of personalty over $500 in value, must appear in the written
note or memorandum to be signed by the party to be charged.

3. If not complete in itself, and oral evidence be required to sup-
ply omissions, then the whole is reduced to parol, and, though
equity may reform, it can no longer specifically enforce.

4. The memorandum of the agreement is insufficient, if the term
during which it is to be effective is not given, and it indicates on
its face the drawing of an agreement, setting forth the necessary
terms and conditions, to be in contemplation of the parties. Spe-
cific performance of a contract of such character cannot be awarded.

5. If the agreement is to sell gas from a well, the purchaser can-
not claim partial performance of the consideration, because he built
a pipe-line to receive the gas, where the cost of such line was not to
be credited as part of the price for the gas when furnished, and was
to be used for transporting gas from other wells in the same field.
This was not such a payment as to take the contract out of the
statute.

Argued January 20, 1921. Appeal, No. 190, Oct. T.,
1920, by plaintiff, from decree of C. P. Allegheny Co.,
April T., 1920, No. 946, dismissing bill in equity, in case
of Manufacturers Light & Heat Co. v. J. C. Lamp, V. A.
Auld and Peoples Natural Gas Co. Before MOSCHZIS-
KER, C. J., WALLING, KEPHART, SADLER and SCHAFFER,
JJ. Affirmed.

Bill in equity for specific performance of contract for
purchase of natural gas. Before SHAFER, J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiff appealed.

*Error assigned,* among others, was decree, quoting it.

*A. Leo Weil,* of *Weil, Christy & Weil,* for appellant.— There was a sufficient note or memorandum signed by the party to be charged: Title G. & S. Co. v. Lippincott, 252 Pa. 112; Chively v. Black, 45 Pa. 345.

It is sufficient that the writing actually signed refers to some other writing, either in existence or to come into existence, which contains all of the terms: Title G. & S. Co. v. Lippincott, 252 Pa. 113; Beckwith v. Talbot, 95 U. S. 289; Railway Co. v. McCarthy, 96 U. S. 258.

The contract between the parties is not barred by the statute, because something was given in part payment.

*Allen T. C. Gordon,* of *Gordon & Smith,* and *Arthur E. Young,* with them *Christie Payne,* for appellee.—The note or memorandum of November 24, 1919, signed by Lamp and Auld is incomplete and unenforceable; besides, appellant seeks to enforce an agreement inconsistent with it or to first reform, by parol evidence, and then enforce it: Gardner v. Hazleton, 121 Mass. 494; Safe Dep. & Trust Co. v. Coal & Coke Co; 234 Pa. 100; Williams v. Morris, 95 U. S. 444; Hammer v. McEldowney, 46 Pa. 334.

There has been no part performance by appellants.

OPINION BY MR. JUSTICE SADLER, February 28, 1921:

Lamp and Auld were part owners of certain gas leases. On November 24, 1919, they were requested by the Manufacturers Light & Heat Company to sell it the gas which might be produced from wells then being drilled, and to which the company proposed to extend its pipe line. They signed an agreement contracting to dispose of their product at "$.14 per thousand cubic feet during the first year and $.15 per thousand cubic feet during the remainder of the contract to be prepared and executed by us. . . . . . Said contract to be prepared for signature and executed within 10 days." At the time of signing, other stipu-

lations were suggested to the agent of the company regulating payment in case the pipe-line was not completed at the time the well began producing. The provision as to length of term, as well as other details, was left for insertion in an agreement to be prepared subsequently; and within ten days such a written contract was submitted, by which the term was fixed at three years. Upon receipt of the copy, Lamp and Auld refused to sign, on the ground that the others interested with them were not satisfied with the arrangement, and the proposed agreement was returned. The lessees afterwards entered into a contract with the Peoples Natural Gas Company, one of the defendants in this proceeding, and furnished gas to it when the well began to produce on December 15, which was thirty days before the Manufacturers Company had completed its line so as to receive the flow. A bill in equity, filed against the proposed vendors, and their ultimate vendee, praying for specific performance of the agreement referred to, and asking for an accounting of the product already sold, was dismissed because of incompleteness of the contract of sale, which the court below held to be within the scope of the 4th section of the Sales Act of 1915.

Prior to this legislation, there was no requirement that contracts for the sale of personalty should be in writing. The Act of March 21, 1772 (1 Sm. L. 389), based on the English Statute of Frauds and Perjuries, was confined to leases for periods of more than three years' duration, and to sales of real estate. Subsequently, it was provided that declarations of trust in real estate should be manifested by a writing (Act of April 22, 1856, P. L. 532), and that promises to answer for the debt or default of another should be evidenced by written note or memorandum: Act April 26, 1855, P. L. 308. In 1915 (Act May 19, 1915, P. L. 543), the Uniform Sales Act was passed, which extended the statute of frauds to sales of personalty where the amount involved exceeded five hundred dollars. Section 4 is based upon the 17th sec-

tion of the English Act of 29 Car. II, c. 35, and, in practically the same language, directs that such transactions shall not be enforceable, with certain exceptions, "unless some note or memorandum in writing of the contract of sale be signed by the party to be charged, or his agent, in that behalf."

Statutes, such as the one with which we are dealing, do not provide mere rules of evidence, but are limitations upon the judicial authority to afford remedies: Safe Deposit & Trust Co. v. Diamond Coal & Coke Co., 234 Pa. 100; Moore v. Eisaman, 201 Pa. 190. If, then, there has been a failure to properly comply with the legislative requirements, relief cannot be granted. The contract of sale must be evidenced by a written note or memorandum. This means, as has been so frequently declared, in the case of contracts dealing with real estate, that all of the essentials of the agreement must appear in the writing to be signed by the party to be charged: Soles v. Hickman, 20 Pa. 180; Conrade v. O'Brien, 1 Pa. Superior Ct. 104; 1 Williston on Contracts, 1101. If not complete in itself, and oral evidence be required to supply omissions, then the whole is reduced to parol, and, though equity might reform, it can no longer specifically enforce: Safe Deposit and Trust Co. v. Diamond Coal & Coke Co., 234 Pa. 100; Rineer v. Collins, 156 Pa. 342. It is true that the statute may be satisfied where the memorandum is made up of several papers, which together will furnish the essential terms; but the separate writings must bear internal reference one to the other. In such case, oral testimony may be offered to identify and show the connection between them (Title G. & S. Co. v. Lippincott, 252 Pa. 112), but such evidence cannot be used to supply proof of the terms of the contract itself: Moore v. Eisaman, 201 Pa. 190.

In the present case, an examination of the writing of November 24, 1914, shows it to be incomplete. The term during which it is to be effective is not given. On its face it indicates the drawing of an agreement, setting

forth the necessary terms and conditions, to have been contemplated by the parties. Such a paper was prepared, but its execution was refused. Nor can we see a curing of the defects by reference to any of the exhibits offered in evidence. The only other, signed by either of the parties to be bound, is the letter of December 6th, which was a refusal to accept the contract as finally written. Specific performance could not be awarded, if section 4 of the Sales Act is applicable.

The subject of the contract is personalty, and its value is in excess of the amount fixed in the statute. It is clear that the case does not come within the exceptions designated in the act. There was no actual acceptance of the goods by the buyer; there never was a delivery, such being refused by the owners. Nor was there part performance, as found in Producers Coke Co. v. Hoover, 268 Pa. 104; nor part payment of the consideration. The building of the pipe-line was for the benefit of the company, and was to be used by it in transporting gas from the entire field in which the defendants, as well as others with whom the company had contracts, were operating. The cost of the line was not to be credited as part of the price to be paid for the product when furnished; its construction was merely a necessary act of preparation, made by the company, so that it could utilize the property purchased when delivered. This was not such a payment as to take the contract out of the statute: Hewson v. Peterman Mfg. Co., 51 L. R. A. (N. S.) 398; Hudnut v. Weir, 100 Ind. 501; Galbraith v. Holmes, 15 Ind. App. 34.

The record presented shows the action of the court below to have been proper, and the assignments of error are overruled.

The decree is affirmed at the cost of the appellant.