## NORTHWESTERN CONSOL. MILLING CO. v. ROSENBERG et al.

(Circuit Court of Appeals, Third Circuit.   March 7, 1923.)

No. 2879.

**1. Frauds, statute of ⊕118(1)—Two papers together held not to constitute "memorandum" of sale signed by buyer.**

Under Uniform Sales Act Pa. May 19, 1915, § 4 (P. L. 543; Pa. St. 1920, § 19652), providing that a contract to sell goods "shall not be enforceable by action * * * unless some note or memorandum in writing of the contract or sale be signed by the party to be charged," where a memorandum of sale of flour, signed by the seller, was not signed by the buyer, a written application to a warehouse company, signed by the buyer, for a permit covering a shipment of flour by the seller, which permit was obtained and forwarded to the seller, *held* not to take the case out of the statute, where such application contained no internal reference to the unsigned memorandum, nor any promise, terms, or assumption of obligation such as contained in the memorandum.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Memorandum.]

**2. Frauds, statute of ⊕89(2)—"Accept" and "actually receive," in statute, are distinct terms, and both are essential to take a case out of the statute.**

Under the provision of Uniform Sales Act Pa. May 19, 1915, § 4 (P. L. 543; Pa. St. 1920, § 19652), that a contract for sale of goods shall not be enforceable "unless the buyer shall accept part of the goods * * * so contracted to be sold or sold, and actually receive the same" the terms "accept" and "actually receive" have distinct meanings, and both acceptance and actual receipt are essential to take a case out of the statutes.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accept; Actually receive.]

**3. Frauds, statute of ⊕149—Allegations of statement of claim held insufficient to take case out of statute;. "actual receipt."**

In an action by the seller for breach of an oral contract for sale of flour, where the statement of claim alleges that plaintiff delivered the flour to a warehouse company the agent of defendants, which received it on behalf of defendants, a further averment that plaintiff granted defendants an extension of time for payment, with the understanding that the flour was to remain in the warehouse until payment was made. negatives "actual receipt" by defendants, essential to take the contract out of the statute of frauds.

**4. Frauds, statute of ⊕90(1)—Control over goods by seller inconsistent with "actual receipt" by buyer.**

So long as the seller retains control over goods, there is no "actual receipt" by the buyer, which will take the contract out of the statute of frauds.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by the Northwestern Consolidated Milling Company against Joseph Rosenberg and Myer Rosenberg, trading as J. Rosenberg & Sons. Judgment for defendants, and plaintiff brings error. Affirmed. For opinion below, see 277 Fed. 245. See, also, 275 Fed. 878.

---

Levi & Mandel and Julius C. Levi, all of Philadelphia, Pa., for plaintiff in error.

Englander, Cohen & Korn and Michael Korn, all of Philadelphia, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The plaintiff, a corporation of Minnesota, and the defendants, citizens of Pennsylvania, entered into a contract for the sale and purchase of flour. The plaintiff shipped the flour, but before it reached Philadelphia the market fell and the defendants declined to pay for it. The plaintiff brought this suit in assumpsit to recover the difference between the contract price and the market price upon the date payment was refused. The defendants, by an affidavit of defense, pleaded the Pennsylvania statute of frauds. Uniform Sales Act of Pennsylvania of May 19, 1915, § 4 (P. L. 543; Pa. St. 1920, § 19652). The plaintiff moved for judgment for want of a sufficient affidavit of defense—a proceeding in Pennsylvania similar to demurrer when a question of law is raised. The court, however, entered judgment for the defendants. The case is here on the plaintiff's writ of error, presenting the single question whether the court erred in applying the Pennsylvania statute to the case as made in the plaintiff's statement of claim. The applicable provisions of this statute are the following:

"A contract to sell or a sale of any goods or choses in action of the value of $500 or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

Doubtless apprehending trouble from this statute, the plaintiff pleaded the contract as an express contract and then stated it in two forms: First, as written, thus taking it wholly outside the statute; and, second, as oral, attempting by specific averments to bring it within an exception of the statute. It now urges with equal confidence that each of these positions is right.

In determining whether under both aspects of the contract recovery is barred by the statute of frauds, we shall discuss the case as though on demurrer and regard as true all facts properly pleaded in the statement of claim.

[1] On the contention that the contract was written and therefore enforceable, the plaintiff declared that it had entered into an oral contract with the defendants whereby they agreed to purchase from it 500 barrels of flour at $15.20 per barrel; that it signed a written memorandum of the contract containing all its terms and forwarded it to the defendants for their signature, but that the defendants did not sign it; that among the terms of the written memorandum was one to the effect that "shipping permit and assortment required for the above flour;" that the defendants applied to the Pennsylvania Warehousing & Safe Deposit Company of Philadelphia for a permit cover-

ing a shipment of one car of flour from the plaintiff in Minneapolis to the defendants in Philadelphia, care of the same warehousing company; that the defendants obtained such a permit and forwarded it to the plaintiff and that by authority thereof the plaintiff shipped flour to the warehousing company as directed.

While conceding that the memorandum of agreement was not signed by the defendants—the parties to be charged—the plaintiff maintains that the written application for a permit to ship flour, signed by the defendants, though addressed to the warehousing company, bears internal reference to the unsigned memorandum and that, taken together, they constitute "a memorandum in writing" and satisfy the requirement of the statute of frauds. The plaintiff bases this contention mainly on the concluding sentence of a paragraph in the opinion in Manufacturers L. & H. Co. v. Lamp, 269 Pa. 517, 520, 112 Atl. 679, 681, where the Supreme Court of Pennsylvania, discussing the statute of frauds of that state, said:

"Statutes, such as the one with which we are dealing, do not provide mere rules of evidence, but are limitations upon the judicial authority to afford remedies. * * * If, then, there has been a failure to properly comply with the legislative requirements, relief cannot be granted. The contract of sale must be evidenced by a written note or memorandum. This means, as has been so frequently declared, in the case of contracts dealing with real estate, that all of the essentials of the agreement must appear in the writing to be signed by the party to be charged. * * * If not complete in itself, and oral evidence be required to supply omissions, then the whole is reduced to parol, and though equity might reform, it can no longer specifically enforce. * * * It is true that the statute may be satisfied where the memorandum is made up of several papers, which together will furnish the essential terms; but the separate writings must bear internal reference one to the other. In such case, oral testimony may be offered to identify and show the connection between them, * * * but such evidence cannot be used to supply proof of the terms of the contract itself. * * *"

The trouble with the plaintiff's reliance upon this authoritative statement of law is that while "the statute may be satisfied where the memorandum is made up of several papers," the defendants' application for a permit, addressed to a third party, is not a paper which in any sense can be regarded as a memorandum of the agreement with the plaintiff. In it no terms are contained, promises made, obligations assumed, or anything done charging the defendants. Although it may be probable that the permit applied for and obtained had to do with the shipment of flour which the parties had in mind, it contains no "internal reference" to the unsigned memorandum. While parol testimony may in a proper case be offered to identify and show the connection between separate writings which bear internal reference one to the other (Title G. & S. Co. v. Lippincott, 252 Pa. 112, 97 Atl. 201, Manufacturers' L. & H. Co. v. Lamp, 269 Pa. 517, 520, 112 Atl. 679), and which together constitute the memorandum in writing required by the statute, this rule does not apply here because, first, neither writing bears internal reference to the other, and, second, parol testimony would have to be admitted not merely to identify and show the connection between the two instruments but to show that each instrument, the one unsigned and the other signed, is a part of the oral agreement

by which the defendants are charged and on which this action is brought.

We are of opinion, therefore, that the plaintiff's statement of claim fails to show a memorandum in writing that satisfies the requirements of the Pennsylvania statute of frauds.

[2] The plaintiff next declared on the contract as an oral contract and by sundry averments sought to bring it within the exception of the statute which makes a contract to sell goods of the value of $500 or upwards not enforcible "unless the buyer shall accept part of the goods * * * so contracted to be sold, and actually receive the same." The provision of the Uniform Sales Act of Pennsylvania, containing this exception, is referred to in Pennsylvania generally, and quite appropriately, as the statute of frauds, because it is based upon the Seventeenth Section of the English Act of 29 Car. II, c. 35, and is in practically the same language. Manufacturers' L. & H. Co. v. Lamp, supra. For more than two centuries this exception of the statute has been a fruitful source of discussion in the courts of England and America where many subtle distinctions have been raised and many irreconcilable decisions rendered. The principal difficulty has centered in the meaning of the term "accept" as used in the statute. Although some courts have held that the terms "accept" and "actually receive" are synonymous, it may now be regarded as definitely settled that these terms have distinct meanings and that both acceptance and actual receipt, which imply delivery, are essential to take a case out of the statute. See cases, 25 R. C. L. 620–622.

[3] To bring itself within the exception of the statute the plaintiff averred that it shipped the flour from Minneapolis to Philadelphia, where, upon arrival, it "was duly delivered by the carrier, which was the agent of the defendants, to the Delaware Avenue stores of the Pennsylvania Warehousing and Safe Deposit Company, also the agent of the defendants," and that when the flour was so delivered to the warehousing company, "who received it on behalf of the defendants, the defendants, following receipt of notice of the arrival of the goods, called at the Delaware Avenue stores and examined and accepted the flour." In endeavoring to bring its case within the exception of the statute, the plaintiff stopped with the averment of acceptance of the goods by the defendant. Whether this averment, so far as it affects the requirement of acceptance alone, is sufficient we are not called upon to decide, because, whether sufficient or insufficient, the plaintiff failed to make an averment of the next requirement of the exception that the buyer did "actually receive" the goods.

[4] The only approach to an averment that the defendants actually received the goods was the plaintiff's statement that the goods were "delivered" to the warehousing company, "as agent of the defendants." Yet this averment, feeble as it is, is made wholly nugatory by another, immediately following, to the effect that the defendants failed to pay the draft for the goods when presented but requested the plaintiff for an extension of time; that the plaintiff granted the defendants an extension of several weeks "with the understanding that the flour was to remain in the warehouse in Philadelphia until the draft was paid by

the defendants." Whatever force may be given the plaintiffs' averment of acceptance of the goods, the plaintiff not only failed expressly to aver actual receipt, but, by the averment last quoted, conclusively showed that the defendants did not actually receive the goods, because the plaintiff refused to allow the defendants actually to receive them until they had paid its draft. Furthermore, it appears that during this period of suspense the defendants acquired no actual control over the goods and that the plaintiff at all times retained actual control. On such conduct the Supreme Court in Hinchman v. Lincoln, 124 U. S. 38, 50, 8 Sup. Ct. 369, 374 (31 L. Ed. 337) quoting Benjamin on Sales, § 187, has said:

"It will already have been perceived that in many of the cases the test for determining whether there has been an actual receipt by the purchaser has been to inquire whether the vendor has lost his lien. Receipt implies delivery, and it is plain that so long as vendor has not delivered there can be no actual receipt by vendee. The subject was placed in a very clear light by Holroyd, J., in the decision in Baldey v. Parker, 2 B. & C. 37: 'Upon a sale of specific goods for a specific price by parting with the possession, the seller parts with his lien. The statute contemplates such a parting with the possession, and therefore, as long as the seller preserves his control over the goods so as to retain his lien, he prevents the vendee from accepting and receiving them as his own within the meaning of the statute.'" Cases in 20 Cyc. 249, 250; 27 Cyc. 244; 25 R. C. L. 620–622.

In examining the provisions of Uniform Sales Acts, enacted in many states, it is clear that legislatures, following the English Statute of Frauds as a model, intended to prevent frauds, invited by the size and complexity of modern commercial transactions, by requiring that agreements above a named sum, to be enforcible, must be reduced to writing. This is a rigid requirement, rigidly enforced by the courts. A sensible exception is made when goods have been accepted and actually received by the buyer, for then the opportunity for fraud has largely disappeared and all intendments of law are in favor of making the buyer who has actually received the goods pay for them. And this is so whether the contract is written or oral, express or implied. After receipt by the buyer, the statute no longer serves a purpose. As the plaintiff failed to make a sufficient averment that the defendants had actually received the goods, and, moreover, as the plaintiff showed that by retaining control of the goods pending payment of its draft, it had, except upon payment, prevented the defendants from actually receiving them, we are constrained to hold that the learned trial judge could have done nothing else than enter judgment for the defendants.

The judgment below is affirmed.