# Vitro Manufacturing Co., Appellant, *v.* Standard Chemical Co.

*Contracts—Sales—Memorandum in writing—Two documents— Internal reference — Offer— Acceptance — Oral evidence—Act of May 19, 1915, P. L. 543—Statement of claim—Demurrer by affidavit of defense.*

1. Where there has been correspondence between parties, a contract between them must arise from the acceptance of the last stated terms, and the acceptance thereof must be unqualified, in order to bring the minds of the parties together.

2. In an action for breach of contract by one corporation against another, where it appears that plaintiff addressed two letters to defendant containing offers, that defendant replied to them by letters in which it did not accept the offers, but suggested other matters and conditions, plaintiff cannot establish a contract by parol evidence that it subsequently accepted the suggestions and conditions in defendant's letters.

3. In such case, defendant's letters being neither unconditional acceptances or explicit offers, the whole correspondence must be viewed as merely part of negotiations between the parties.

4. The memorandum required by the Act of May 19, 1915, P. L. 543, as evidence of a contract of sale for goods over $500 in value, is insufficient where it does not state all essential terms of the contract alleged, where it omits or states incompletely a single essential term; where it merely refers to the contract without stating its terms; or where it shows expressly or inferentially that there are terms which it either does not state or does not clearly and sufficiently state.

5. If there is merely an indication of the existence of an incomplete agreement, it is not enough.

6. If the essentials of a contract appear in writing, and signed assent to them has been given by the party to be bound, it is sufficient if the agreement is shown by separate papers, so long as those relied on are so connected by internal references as in effect to make one document evidencing a common understanding by the parties thereto.

7. Oral evidence is admissible only for the purpose of identifying the papers, but not to supply proof of the terms of the contract itself.

8. To make a contract of sale enforceable under the provisions of the Sales Act relating to the acceptance of goods, where there is no sufficient writing or payment of earnest money, both actual delivery to and acceptance by the purchaser of part of the goods must appear.

9. In an action for breach of contract of sale, the statement of claim must, when demurred to, be self sustainable, and must contain all the facts necessary to show compliance with the requirements of section 47 of the Sales Act of May 19, 1915, P. L. 543.

Argued September 30, 1927.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 158, March T., 1927, by plaintiff, from judgment of C. P. Allegheny Co., April T., 1927, No. 2471, for defendant, on question of law raised by affidavit of defense, in case of Vitro Manufacturing Co. v. Standard Chemical Co.   Affirmed.

Assumpsit for breach of contract.   Before GRAY, J.

The opinion of the Supreme Court states the facts.

The exhibits mentioned in the opinion were as follows:

Exhibit "A" is a letter dated November 2, 1926, from the Vitro Manufacturing Co. to the Standard Chemical Co., as follows: "You have on hand at your Canonsburg plant about 60 tons of Vanadium Residue, for which we beg to submit the following proposition: We will purchase 60,000 lbs. of this material to be delivered to us during the next twelve months at 15 cts. per lb., f. o. b.

care your plant, a discount of 1% to be allowed if paid within 10 days from date of shipment. The material is to be shipped as follows: 30,000 lbs. to be taken out at once, and 30,000 lbs. six months later. It is agreed that you will give us an option on the balance of the material to be taken out during the year 1928 at the same price and upon the same terms and conditions as above. If this proposition is agreeable to you, kindly write us accepting same."

Exhibit "A (1)" is a letter dated November 16, 1926, from the Standard Chemical Company, to the Vitro Manufacturing Company, as follows: "We have your letter of November 2d, enclosing two propositions for purchase of some of our vanadium and uranium products. Your understanding in regard to adjustment of the selling price to correspond with the prevailing price in the domestic market of 80% Sodium Uranate is correct; this is we are offering vanadium residue at 15 cts. per pound, f. o. b. our works, Canonsburg, Pa. On documentary evidence submitted by your company showing a decline in price of 80% Sodium Uranate in the American market we will be agreeable to reducing the price of the vanadium residue accordingly. Mr. Raymer, however, cannot see his way clear to making this a retroactive arrangement; that is, to make a reduction in the price of any of this material that you may have purchased previously and have not disposed of, but the lower price will apply on the next lot purchased. It is also understood that 30,000 pounds of this material is to be taken at once; 30,000 pounds within six months and that you will be given an option to purchase the additional 60,000 pounds of vanadium residue at the same price and terms, shipment to be made on or before December 31, 1928."

Exhibit "B" is a letter dated November 2, 1926, from the Vitro Manufacturing Co. to the Standard Chemical Co., as follows: "It is agreed between us that you will hold for shipment to and for us 120,000 lbs. sodium

uranyl carbonate, to be delivered to us and for us as specified from time to time during the period beginning November 2, 1926, and ending November 2, 1931. The price to be paid by us for the material to be:

| When Sodium Uranate 80% $U_3O_8$ grade sells at | Price per lbs. of sodium uranyl carbonate is to be | |
| --- | --- | --- |
| 1.25 ............................. | 40 | cts. |
| 1.20 ............................. | 38 | cts. |
| 1.15 ............................. | 35 | cts. |
| 1.10 ............................. | 33 | cts. |
| 1.05 ............................. | 31 | cts. |
| 1.00 ............................. | 28 | cts. |
| .95 ............................. | 25 | cts. |
| .90 ............................. | 23 | cts. |
| .85 ............................. | 20½ | cts. |
| .80 ............................. | 18 | cts. |
| .75 ............................. | 15½ | cts. |
| .70 ............................. | 13 | cts. |
| 1.30 ............................. | 42 | cts. |
| 1.35 ............................. | 45 | cts. |
| 1.40 ............................. | 47 | cts. |
| 1.45 ............................. | 49 | cts. |
| 1.50 ............................. | 52 | cts. |
| 1.55 ............................. | 55 | cts. |
| 1.60 ............................. | 57 | cts. |
| 1.65 ............................. | 59½ | cts. |
| 1.70 ............................. | 61½ | cts. |
| 1.75 ............................. | 63½ | cts. |
| 1.80 ............................. | 65 | cts. |
| 1.85 ............................. | 67 | cts. |

f. o. b. your plant, Canonsburg, Pa. Terms to be 1% discount for cash in 10 days from date of invoice, or 30 days net. Will you kindly acknowledge receipt and assent to the above by mail at your early convenience."

Exhibit "B (1)" is a letter dated November 16, 1926, from the Standard Chemical Company, to the Vitro Manufacturing Company, as follows: "We have carefully noted your letter of November 12th, regarding the price of Sodium Uranyl Carbonate. At the present time

we cannot offer this material for foreign shipment or domestic sale for less than 40 cts. per pound without first taking this matter up with our principals in Belgium and securing permission to meet foreign competition on this commodity, based on the prevailing price in European countries for 80% Sodium Uranate. The graduated scale of prices given in your letter of November 2d, is to cover fluctuations that may arise in the domestic market. If we can arrange to offer our material for foreign sale to compete with European markets we will be glad to make the necessary reduction in our price to you. Another point raised by our President, Mr. Raymer, is that we are giving you an exclusive right to purchase our stock of Sodium Uranyl Carbonate covering a period of five years, without any obligation on the part of the Vitro Company to take it, he therefore suggests that the following provision be made: In case it should become necessary for our company to abandon its activities in Uranium and vanadium products after December 31, 1927, the Vitro Manufacturing Company will be given a sixty days option to take such quantities of our remaining stock of this material then available, under the terms of this agreement."

Judgment for defendant. Plaintiff appealed.

*Error assigned,* inter alia, was judgment, quoting record.

*Humphrey Morris,* with him *J. B. Orr,* for appellant. —The memoranda of the contracts fully meet the requirements of the Sales Act: Davies v. Hillman, 286 Pa. 16.

Defendant's replies to plaintiff's letters refer so closely thereto as to incorporate their contents therein: Title Guaranty & Surety Co. v. Lippincott, 252 Pa. 112; Paturzo v. Ferguson, 280 Pa. 379; Franklin Sugar Refining Co. v. Howell, 274 Pa. 190.

The memoranda contain all the terms of the contracts sued on: Briggs v. Iron & Steel Co., 276 Pa. 326.

*E. W. Smith,* of *Reed, Smith, Shaw & McClay,* with him *Packer & Sherrard,* for appellee.—The letters do not in either case contain a contract or a memorandum of a contract.

The statute requires that all the terms of the contract be in writing, subscribed by defendant, as the party to be charged. All the authorities agree that the terms of a separate writing must be incorporated into defendant's letter in order to bind him. Mere acquiescence in what the other party may have said, mere implications or inferences, are not such incorporation, and do not satisfy the statute.

The law governing the questions here involved is well stated in Manufacturers Light & Heat Co. v. Lamp, 269 Pa. 517; Mason Heflin Coal Co. v. Currie, 270 Pa. 221.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, November 28, 1927:

This is an action of assumpsit to recover losses claimed to have been suffered because of defendant's failure to deliver goods purchased from it by plaintiff corporation under two alleged contracts, the amount involved in each being over $500. Defendant corporation filed an affidavit of defense in the nature of a demurrer; plaintiff entered a rule for judgment for want of a sufficient affidavit of defense; the court below not only discharged the rule, but also gave judgment for defendant; this appeal followed.

The statement of claim avers that, on November 20, 1926, plaintiff and defendant entered into the contracts here in question, "true and correct copies of said contracts" being attached and made part of plaintiff's averments; that, "under the first contract," plaintiff submitted to defendant a written proposal for the purchase of vanadium residue, this proposal being marked ex-

hibit "A," and that defendant, on November 16, 1926, sent to plaintiff a written "acceptance," exhibit "A (1)" of its proposal; that, after this exchange of proposal and acceptance, "plaintiff and defendant met......, and the conditions proposed by defendant in its acceptance were accepted by plaintiff"; that, "under the second contract," plaintiff submitted to defendant a written proposal for the purchase of sodium uranyl carbonate, exhibit "B," and that defendant, on November 16, 1926, submitted to plaintiff a written "acceptance," exhibit "B (1)" of its proposal; that, after this exchange of proposal and acceptance, "plaintiff and defendant met ......, and the conditions proposed by defendant in its acceptance were accepted by plaintiff." (Copies of these four exhibits will be found in the Reporter's notes to this case.)

The statement of claim avers also, as to each of the two alleged contracts, that, "at the same time as the acceptance of the said contract,......plaintiff, the buyer, then and there expressly and orally assented to defendant that it would accept the goods contracted for and would become the owner of the specific goods, and thereafter sent to defendant a written order, duly executed, requesting the shipment forthwith to plaintiff of a portion of the said goods in pursuance of said contract"; but the goods were not shipped.

Defendant, by its affidavit of defense, demurred (1) that plaintiff's averments and exhibits failed to show completed contracts, and (2) that they were "not sufficient [in either of the two instances above stated] to take the alleged contract sued upon from under the statute of frauds as contained in section 4 of the Sales Act of May 19, 1915," P. L. 543.

The section in question provides, by paragraph one, that "A contract to sell or a sale of any goods......of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods......so contracted to be sold, or sold, and

actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf"; by paragraph two, that "The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time"; and by paragraph three, that "There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, or any part thereof, expresses by words or conduct his assent to becoming the owner of those specific goods."

Grounds of demurrer other than those we have stated were also relied on by defendant, but the court below ruled the case on the two grounds above mentioned, and we shall do likewise.

Throughout the statement of claim plaintiff refers to exhibits "A" and "A (1)" in one instance, and to "B" and "B (1)" in the other, as respectively constituting the contracts in suit. Plaintiff now contends, however, that these respective sets of exhibits do not constitute the two contracts sued on, but simply serve as written memoranda, in each instance connected by internal references of a character sufficient to meet the requirements of the statute of frauds; and that the respective contracts were consummated by what it now designates —without any attempt to aver the terms thereof—as plaintiff's "oral" acceptance of that which it calls defendant's acceptance (this being "A (1)" in the first set of letters and "B (1)" in the other) of plaintiff's original proposals, exhibit "A" in one instance and "B" in the other. Therefore, plaintiff argues, the contracts sued on were oral contracts; though, as just said, the statement of claim fails to aver either that plaintiff's so-called acceptances of the terms of defendant's letters "A (1)" and "B (1)" were in fact made by spoken words, or, if so, what words were employed.

When the correspondence now before us is examined, it shows no offers and acceptances of a character sufficient to make a contract. Exhibit "A (1)" refers in a somewhat general way to certain matters, apparently brought in as terms of a contemplated contract, which are in no manner mentioned in exhibit "A"; so the former is not an acceptance of the latter in such sense that together they would make an agreement between the correspondents. The same is equally true of the second set of letters, "B" and "B (1)"; the latter refers to two epistles received by defendant, namely, "B" and a letter of a different date, not in the record, and the exact contents of which are undisclosed. In other words, neither set of correspondence shows the two essential elements of a contract, a plain offer and unqualified acceptance. "A contract must arise from the acceptance of the last stated terms, and the acceptance [thereof] must be identical, in order to bring the minds of the parties together": Frick & Lindsay Co. v. Johnstown & S. Ry. Co., 271 Pa. 536, 537. It is evident from this correspondence that the parties were negotiating to buy and sell, and that each set of letters refers only to proposed understandings which were to be concluded in the future; whereas, if a right of recovery is to be shown, the terms of a concluded agreement must appear. That these letters in and of themselves do not form contracts is practically admitted by the statement of claim, when, after a recital of the respective sets of exhibits, it adds: "After the exchange of said proposal and acceptance, plaintiff and defendant met,......and the conditions proposed by defendant in its acceptance were accepted by plaintiff."

Following the line of argument indicated by the matter last above quoted, plaintiff now looks upon exhibits "A (1)" and "B (1)," respectively, as constituting something so final that a mere oral acceptance thereof would make a binding agreement; it regards the declared oral acceptances of defendant's two letters as sufficient in

themselves to terminate all prior negotiations, and in each instance to settle the terms of the contract alleged. We can not so view the situation, however, for, as is said in the brief of counsel for defendant, the "ingenious attempt of plaintiff" to derive contracts out of the correspondence in this case by treating defendant's letters as final acceptances on definitely stated terms of offers by plaintiff, and then, by spoken words, accepting these acceptances, utterly fails if defendant's two letters were not in fact acceptances; and, as shown above, the last-mentioned epistles cannot be termed as acceptances, conditional or otherwise, of offers contained in the letters from plaintiff shown on this record. They are merely part of negotiations between the parties, and no amount of oral accepting by plaintiff could convert them into documents in the nature of acceptances of distinct proposals' previously received by defendant, plus definite counter-contractual offers on its part; though this is how they must be viewed in order to sustain appellant's position.

After considering all allegations of fact in the statement of claim and also the exhibits attached thereto, we conclude that the contracts depended upon by plaintiff are not established by sufficient averments, and our opinion might end with this finding, which sustains defendant's first ground of demurrer; but, since it will serve a useful purpose so to do, we shall proceed to consider defendant's second ground of demurrer, to the effect that, assuming the contracts to have been made, no memorandum thereof, within the requirements of the statute of frauds, appear on this record.

Plaintiff, relying on the oral contracts contended for by it, offers the two sets of letters, exhibits "A" and "A (1)," and "B" and "B (1)," as memoranda under the Sales Act of 1915, P. L. 543, section 4, paragraph 1, sufficient to render these alleged agreements legally enforceable. The sufficiency of the memorandum required by this statute of frauds must necessarily depend upon

the facts of each particular case, but, generally, "a writing is insufficient as [such] a memorandum where it does not state [all essential] terms of the contract [alleged]; where it omits or states incompletely a single essential term; where it merely refers to the contract without stating its terms; or where it shows expressly or inferentially that there are terms which it either does not state or does not clearly and sufficiently state": Swift & Co. v. Meehan, 283 Pa. 429, 432. Also, it must be remembered that "if there is merely an indication of the existence of an incomplete agreement, it is not enough": Franklin Sugar Refining Co. v. John, 279 Pa. 104, 109.

It is true that, if the essentials of a contract appear in writing, and signed assent to them has been given by the party to be bound, it is sufficient if the agreement is shown by separate papers, so long as those relied on are so connected by internal references as in effect to make one document evidencing a common understanding by the parties thereto: Franklin Sugar Refining Co. v. John, supra, 109, 110; Swift & Co. v. Meehan, supra, 432, 433. Here, however, examination of the correspondence shows that neither exhibits "A" (letter of plaintiff) and "A (1)" (reply of defendant), nor those marked "B" (letter of plaintiff) and "B (1)" (reply of defendant), contain internal references on which a court could safely determine that the two papers which figure in either instance in effect constitute one document, show a common understanding, or even contain all the terms under negotiation between the correspondents. What we have just said is more than indicated in a preceding paragraph of the present opinion, and, at this point, it would serve no useful purpose to take time in further demonstration,—though, if necessary, such demonstration could readily be made; it is enough that we find that in neither instance are the letters of plaintiff and defendant so connected by internal references that the former can be read into the latter and thus

show a completed whole or indicate such a mutual understanding between the parties that, by simple acceptance of defendant's letter, the correspondence could be reduced to evidence of the terms of a complete agreement which would satisfy the requirements of the Act of 1915, supra.

On occasions, testimony may be offered to identify documents and thus show the connection between writings depended upon as memoranda of a contract in suit, —though such oral evidence may be allowed to show no more than the identity of the papers; but, in the present case, the contention is that the respective sets of letters are sufficient in themselves for that purpose, and we have no averment of other evidence to establish the required connection. Where, as here, the written memoranda depended upon were, beyond question, made in the course of negotiating the contract alleged, not after the event and as a record thereof, it is absolutely necessary that the essential terms of the agreement, as actually consummated between the parties, shall appear without the necessity of oral explanation, and if more than one paper is depended upon for that purpose, the internal references to connect them must be clear to the same extent, no oral evidence being allowed except, as just stated, for purposes of mere identification. Of course, when, as in this case, the law requires a written memorandum of a contract, testimony "cannot be used to supply proof of the terms of the contract itself" (Manufacturers' L. & H. Co. v. Lamp, 269 Pa. 517, 520; and see also Northwestern C. M. Co. v. Rosenberg, 287 Fed. 785, 787); and, as already ruled, the letters on this record do not alone furnish such proof. Hence plaintiff's case fails.

The last paragraph quoted, earlier in this opinion, from the statement of claim, was evidently inserted for the purpose of bringing plaintiff's case within those provisions of the Sales Act as to acceptance of goods (to be found at the middle of paragraph 1 and contained in

paragraph 3 of section 4 of the act, supra) which provide that, where a buyer accepts part of the goods, there need be no written memorandum signed by the party to be charged. Plaintiff, however, overlooks the words of the section which, to make the provision in question applicable, require not only a legal acceptance of part of the goods, but also that the buyer shall "actually receive same"; and actual receipt of the goods is not even claimed to be a fact in this case. To make a contract of sale enforceable in a case like the present, where there is no sufficient writing or payment of earnest money, both actual delivery to and acceptance by the purchaser of part of the goods must appear: Dolan M. Co. v. Marcus, 276 Pa. 404, 406, 407; see also Northwestern C. Milling Co. v. Rosenberg, 287 Fed. 785, 788.

The statement of claim, when demurred to, must, of course, be self-sustaining, and, to that end, it must contain all facts necessary to a recovery; in a case like the one before us, it must not only aver facts which show a consummated contract, but also "all the facts necessary to show compliance with the requirements of section 4 of the Sales Act": Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, 222; Briggs v. Logan I. & S. Co., 276 Pa. 326, 329; Guppy v. Maltrop, 281 Pa. 343, 345. Here, while the statement was evidently drawn with great care, yet its averments, and the exhibits incorporated therein, fail to meet either of the above requirements. In short, plaintiff did not aver a case entitling it to recover at trial; and, as recently said by us in Mason-Heflin Coal Co. v. Currie, supra, 223, "It would......be a waste of time to spend days, or even minutes, in a trial, only to find at the end thereof that there could be no recovery." The court below did not err in entering judgment for defendant.

The judgment is affirmed.