## Rosenblum v. Sussman

*Martin. E. Cusick*, for plaintiff.

*Nathan Routman*, for defendant.

ROWLEY, P. J., September 24, 1945.—This matter is before the court upon preliminary objections to a bill in equity.

Plaintiff's bill prays a decree of specific performance of an averred contract for the sale of real estate.

Defendant's preliminary objections are:

"(1) The averments contained in the bill in equity do not disclose a legally binding contract.

"(2) The averments contained in the bill do not disclose any grounds for equitable relief and the alleged contract is one that equity will not enforce.

"(3) The bill in equity does not set forth a legal cause of action.

"(4) The averments contained in the bill in equity do not set forth any legal basis for the specific performance of the alleged contract in that there was no compliance with the requirements of the statute of frauds."

Plaintiff avers a written agreement by defendant to sell him certain real estate. This averred agreement consists of three letters and a telegram.

*Exhibit A*

"July 11, 1944
Detroit, Michigan"

"Dear Mr. Rosenblum:

In reference to the offer you recently quoted to my sister ($15,000. cash) for the sale of my share of the Gable property.

I am pleased to accept your offer.

Please write me and let me know when it would be convenient for us to get together in Sharon to close the deal.

Sincerely yours,

Rebecca Sussman"

*Exhibit B*

"July 13, 1944"

"Mrs. R. Sussman,
2491 Glynn Court
Detroit, 6, Michigan.
Dear Mrs. Sussman:

This will acknowledge the receipt of your letter of July 11.

I am enclosing an option which you are to sign in which you agree to sell your half interest in this property, clear of all liens, for $15,000.00 cash.

I want this amount of time mentioned in the option in order to try to raise enough money to purchase your interest myself. If I am unable to do so, I feel certain that I can interest somebody in Sharon at this price.

Very truly yours,

A. M. Rosenblum"

*Exhibit C*

"2491 Glynn Court<br>Detroit, Michigan<br>July 18, 1944"

"A. M. Rosenblum,
72 Silver Street,
Sharon, Pa.
Dear Mr. Rosenblum:

This will acknowledge the receipt of your letter of July 13th.

I am returning the option which I do not care to sign. However, if at any time you have raised the

money and wish to close the deal, I shall be glad to do so.

Let me hear from you soon.

Very truly yours,

Rebecca Sussman"

*Exhibit D*

"Sharon, Pa.
August 21, 1944"

"Rebecca Sussman,
2491 Glynn Court,
Detroit, Michigan.

I hereby accept your written offer of July 18th to sell me your one-half interest in the Gable House property for fifteen thousand dollars.

Send your deed to Merchants & Manufacturers National Bank of Sharon with instructions to deliver to me upon payment of purchase price.

A. M. Rosenblum,
72 Silver Street,
Sharon, Pa."

In considering preliminary objections, we are mindful of the rule that a bill in equity should not be dismissed because of objections under Equity Rule 48, unless the facts show that plaintiff cannot possibly recover.

As to this character of objections, Equity Rules 48 and 49 must be construed in the same way as similar objections to plaintiff's statement of claim under the Practice Act of May 14, 1915, P. L. 483.

"The course of procedure thus provided for,—which prevents the ancient injustice of at once dismissing an action for a failure to plead properly,—was deliberately adopted to comport with the provisions of the Practice Act of May 14, 1915, P. L. 483, which requires that in determining whether or not a summary judgment should be entered, 'the question to be decided . . . is not whether the statement

is so clear, in both form and specification, as to entitle plaintiff, without amendment, to proceed to trial, but whether, upon the facts averred, it shows as a "question of law", that plaintiff is not entitled to recover': . . .": Gray v. Phila. & Reading Coal & Iron Co., 286 Pa. 11; Naffah v. City Deposit Bank, 339 Pa. 157.

Defendant's brief states the question involved, as follows:

"The real question that must be answered by the court is neither profound nor difficult. It can be stated thusly:

" 'Did defendant's letter of July 18, 1944, constitute a bona fide offer to sell her interest in the Gable Hotel, the acceptance of which without further negotiation by plaintiff would constitute a valid contract enforcible in equity?' "

Defendant says this question must be answered in the negative, and cites Upsal Street Realty Co. v. Rubin, 326 Pa. 327, 329, to support this conclusion. The Upsal case deals at length with the distinction between an "offer" and merely "preliminary negotiations" looking toward a future bargain.

We quote from that opinion,

"That an *offer* is distinguished from *preliminary negotiations* is a fact well recognized in the law of contracts. Williston on Contracts (revised edition), vol. 1, sec. 27, makes this statement: 'Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is rather that they are inviting offers, or suggesting the terms of a possible future bargain, than making positive offers. . . . Language that at first sight may seem an offer may be found merely preliminary in its character.' Section 25 of the Restatement of the Law of Contracts reads as follows:

"' 'If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer.'

"Section 26: 'Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions as stated in Section 25.'

"In 'Comment' under section 26 appears the following: 'a . . . if the preliminary agreement is incomplete, it being apparent that the determination of certain details is deferred until the writing is made out; or if an intention is manifested in any way that legal obligations between the parties shall be deferred until the writing is made, the preliminary negotiations and agreements do not constitute a contract.' "

In seeking to apply the foregoing principle to the instant question, our problem is to ascertain whether the words and conduct of the parties or the existing circumstances, or any other facts, warrant an inference that legal obligations between the parties were intended to be deferred until a formal contract was executed. From the words and conduct of Mrs. Sussman or from the existing circumstances, can it be reasonably inferred that Rosenblum knew, or had reason to know, that Mrs. Sussman did not intend her letter of July 18, 1944, as an expression of her fixed purpose to sell the premises until she had given a further expression of assent?

It must be conceded that the letter of Mrs. Sussman dated July 11, 1944, wherein she declared:

"In reference to the offer you recently quoted to my sister ($15,000 cash) for the sale of my share of the Gable property. I am pleased to accept your offer."

was an unequivocal offer to become bound upon acceptance by Rosenblum. However, the counter proposal for an option was tantamount to a rejection by Rosenblum.

Although the proposal of July 11, 1944, was rejected by Rosenblum, we are privileged to consider all of the communications between the parties in our effort to ascertain the intention of the parties.

". . . if the essentials of a contract appear in writing, and signed assent to them has been given by the party to be bound, it is sufficient if the agreement is shown by separate papers, so long as those relied on are so connected by internal references as in effect to make one document evidencing a common understanding by the parties thereto.": Vitro Manufacturing Co. v. Standard Chemical Co., 291 Pa. 85, 95.

If the preliminary agreement is incomplete, that circumstance might in itself be sufficient to sustain an inference that the legal obligations of the parties were to be deferred. The Upsal case and other authorities cited by defendant were concerned with leases.

Perhaps it will be conceded that a lease of property ordinarily involves a more detailed statement of the rights and obligations of the contracting parties than is included in a conveyance of property. An agreement for the sale of land free from encumbrances for a cash consideration requires little specification since the law defines the rights and liabilities of the grantor and grantee with respect to possession, payment of taxes and the like. Normally, a grantor's interest in the premises is extinguished by the execution of the deed, whereas a lease contemplates a reversion of the premises to the lessor.

It is the function of a lease to define the continuing rights and liabilities of the parties. Obviously, the data necessary for preparation of a lease is detailed.

In order to prepare a deed in consummation of an agreement for the sale of land, free of encumbrances, for a cash consideration, it is usually sufficient if there is specification as to the names of the parties, the price, and identification of the premises.

An examination of the communications between the parties discloses the names of the parties, the consideration, terms of payment, and describes the premises as one half of the Gable property. If it be argued that the premises are not sufficiently described, determination of the point must await plaintiff's evidence at the hearing.

A vital question is the significance of the following statement in defendant's letter of July 18,

"If at any time you have raised the money and wish to close the deal, I shall be glad to do so."

At this stage of the proceedings we are not warranted in declaring that it was not the intention of Mrs. Sussman to make an offer, nor can we now say that the negotiations were merely preliminary to a contemplated formal contract. We do not now find evidence that Rosenblum knew, or had reason to know, that Mrs. Sussman was only inviting an offer and did not intend to be bound until she had given some further expression of assent.

The clause "at any time you have raised the money" seems to constitute a proposal to sell for "the money" specified in the preceding communications. In both of her letters Mrs. Sussman employs the expression "close the deal". From the facts presently available, we are of the opinion that the words "to close the deal" implied delivery of the deed and payment of the purchase money. The expression does not seem to suggest a meeting to make a formal

agreement for a sale, but rather a meeting to consummate the sale.

Defendant's letter proposed, "at any time . . . to close the deal." Plaintiff's acceptance is dated August 21, 1944, 34 days after the date of the offer. Defendant might have withdrawn her offer at any time prior to acceptance by plaintiff. The question arises whether the acceptance was communicated in time to bind the offeror.

An offeror may fix any time that he wishes as that within which acceptance must be made. He need not make the time a reasonable one. If, however, no time is fixed the offeree is justified in assuming that a reasonable time is intended, and the offer is given this interpretation.

If no time for acceptance is specified in an offer, the offer terminates at the end of a reasonable time. What is a reasonable time is a question of fact depending upon the nature of the contract proposed, the usages of business and other circumstances of the case which the offeree at the time of his acceptance either knows, or has reason to know. A. L. I. Restatement of the Law of Contracts, section 40.

The offer of Mrs. Sussman was couched in broad terms. We need not decide whether the offer was open for acceptance until expressly withdrawn. In any event the offeree had a reasonable period within which to accept. At this point in the proceeding we would not be justified in declaring that 34 days was not a reasonable period.

Defendant urges that no part of the purchase money had been paid, possession has not been delivered, nor improvements made by vendee. However, these elements are vital only when written evidence of a contract is lacking.

"The essential basis of a decree for specific performance is a definite present agreement in regard

to a specified piece of land, clearly designated as present to the mind of both parties, and to be conveyed by one to the other. Without this basis there is nothing to take a case out of the general rule of law that the remedy for a contract unperformed is an action for damages. Every element of this essential basis must be clearly and fully established, even where the contract is in writing." . . . : Baldridge v. George, 216 Pa. 231; Brown v. Hughes, 244 Pa. 397.

If the definite terms of a contract are left for future action of the parties, a refusal to perform may make a party liable for damages, but would not subject him to the obligation of specific performance. A chancellor can only enforce an agreement specifically where the parties have agreed definitely on all its terms, and left nothing to the future but bare performance. Agnew v. Southern Ave. Land Company, 204 Pa. 192.

In the instant case we do not find a lack of definite, essential terms.

"To entitle a person to specific performance of a contract 'there must have been a valid subsisting contract, . . . and the instrument must be clear, unambiguous, and certain, . . .': Story's Equity Jurisprudence, 14th Ed. vol. 2, sec. 987, p. 365. The exercise of equity power respecting the rescission and specific performance of contracts 'is not a matter of right in either party, but it is a matter of discretion in the court, . . . of that sound and reasonable discretion which governs itself as far as it may by general rules and principles, but which at the same time withholds or grants relief, according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.' Ibid. sec. 1026": Duc v. Struckus, 345 Pa. 65.

We do not now determine whether plaintiff is entitled to the remedy he seeks. Upon preliminary

objections the question is whether plaintiff may proceed to a hearing upon the merits.

The subject matter of a bill for specific performance may consist of specific property having a market value, nevertheless, the failure to perform as agreed may cause additional losses or prevent gains, the amount of which is not capable of accurate determination.

The difficulty, inconvenience, or impossibility of obtaining a duplicate or substantial equivalent of the promised performance by means of money awarded as damages is always considered.

A. L. I. Restatement of the Law of Contracts (sec. 358 (d) declares:

"There has been a progressive tendency in the United States to increase the number of cases in which money damages are not regarded as an adequate remedy, with a resulting greater liberality in granting decrees for specific performance."

Section 358 (c):

"The adequacy of the remedy in damages for the doing of complete justice can seldom be determined with certainty. (see §361.) Where its adequacy is doubtful or difficult to determine, and in other respects the case is a proper one for decreeing specific performance, the doubt should be resolved in favor of granting such a decree."

Section 360:

"Damages are regarded as an inadequate remedy for the breach of a promise

(a) to transfer any interest in specific land, . . ."

Inasmuch as we have concluded that plaintiff is entitled to proceed to a hearing upon the merits, we have refrained from an extended discussion, lest there be prejudgment of points which are properly determined only after hearing.

622

*Order*

And now, September 24, 1945, this matter came on for argument upon preliminary objections to the bill, and the same was argued by counsel, whereupon, after careful consideration it is ordered, adjudged and decreed that the preliminary objections be dismissed, and defendant be directed to answer the averments of the bill.